Justice Ginsburg
delivered the opinion of the Court.
The Federal Power Act (FPA or Act), 41 Stat. 1063, as amended, 16 U. S. C. § 791a et seq., authorizes the Federal Energy Regulatory Commission (FERC or Commission) to superintend the sale of electricity in interstate commerce and provides that all wholesale-electricity rates must be “just and reasonable,” §824d(a). Under this Court’s Mobile-Sierra doctrine, FERC must presume that a rate set by “a freely negotiated wholesale-energy contract” meets the statutory “just and reasonable” requirement. Morgan Stanley Capital Group Inc. v. Public Util. Dist. No. 1 of Snohomish Cty., 554 U S. 527, 530 (2008). “The presumption may be overcome only if FERC concludes that the contract seriously harms the public interest.” Ibid.
This ease stems from New England’s difficulties in maintaining the reliability of its energy grid. In 2006, after several attempts by the Commission and concerned parties to *168 address the problems, FERC approved a comprehensive settlement agreement (hereinafter Settlement Agreement or Agreement). Most relevant here, the Agreement established rate-setting mechanisms for sales of energy capacity, and provided that the Mobile-Sierra public interest standard would govern rate challenges. Parties who opposed the settlement petitioned for review in the United States Court of Appeals for the D. C. Circuit. Among multiple objections to FERC’s order approving the Agreement, the settlement opponents urged that the rate challenges of nonsettling parties should not be controlled by the restrictive Mobile-Sierra public interest standard. The Court of Appeals agreed, holding that “when a rate challenge is brought by a non-contracting third party, the Mobile-Sierra doctrine simply does not apply.” Maine Pub. Util. Common v. FERC, 520 F. 3d 464, 478 (2008) (per curiam).
We reverse the D. C. Circuit’s judgment to the extent that it rejects the application of Mobile-Sierra to noncontracting parties. Our decision in Morgan Stanley, announced three months after the D. C. Circuit’s disposition, made clear that the Mobile-Sierra public interest standard is not an exception to the statutory just-and-reasonable standard; it is an application of that standard in the context of rates set by contract. The “venerable Mobile-Sierra doctrine” rests on “the stabilizing force of contracts.” Morgan Stanley, 554 U. S., at 548; see id., at 551 (describing contract rates as “a key source of stability”). To retain vitality, the doctrine must control FERC itself, and, we hold, challenges to contract rates brought by noncontracting as well as contracting parties.
I
In a capacity market, in contrast to a wholesale-energy market, an electricity provider purchases from a generator an option to buy a quantity of energy, rather than purchasing the energy itself. To maintain the reliability of the grid, *169 electricity providers generally purchase more capacity, i. e., rights to acquire energy than necessary to meet their customers’ anticipated demand. For many years in New England, the supply of capacity was barely sufficient to meet the region’s demand. FERC and New England’s generators, electricity providers, and power customers made several attempts to address this problem. This case stems from the latest effort to design a solution.
In 2003, a group of generators sought to enter into “reliability must-run” agreements with the New England Independent System Operator (ISO), which operates the region’s transmission system.[1] In its orders addressing those agreements, FERC directed the ISO to develop a new market mechanism that would set prices separately for various geographical subregions. Devon Power LLC, 103 FERC ¶ 61,082, pp. 61,266, 61,271 (2003).
In March 2004, the ISO proposed a market structure responsive to FERC’s directions. See Devon Power LLC, 107 FERC ¶ 61,240, p. 62,020 (2004). FERC set the matter for hearing before an Administrative Law Judge (ALJ), who issued a 177-page order largely accepting the ISO’s proposal. Devon Power LLC, 111 FERC ¶ 63,063, p. 65,205 (2005). Several parties filed exceptions to the ALJ’s order; on September 20, 2005, the full Commission heard arguments on the proposed market structure, and thereafter established settlement procedures. Devon Power LLC, 113 FERC ¶ 61,075, p. 61,271 (2005).
After four months of negotiations, on March 6, 2006, a settlement was reached. Of the 115 negotiating parties, only 8 opposed the settlement.
*170 The Settlement Agreement installed a “forward capacity market” under which annual auctions would set capacity prices; auctions would be conducted three years in advance of the time when the capacity would be needed. Devon Power LLC, 115 FERC ¶ 61,340, pp. 62,304, 62,306-62,308 (2006). Each energy provider would be required to purchase enough capacity to meet its share of the “installed capacity requirement,” i. e., the minimum level of capacity needed to maintain reliability on the grid, as determined by the ISO. Id., at 62,307. For the three-year gap between the first auction and the time when the capacity procured in that auction would be provided,[2] the Agreement prescribed a series of fixed, transition-period payments to capacity-supplying generators. Id., at 62,308-62,309.
The issue before us centers on §4.C of the Agreement (hereinafter Mobile-Sierra provision). Under that provision, challenges to both transition-period payments and auction-clearing prices would be adjudicated under “the ‘public interest’ standard of review set forth in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U. S. 332 (1956)[,] and [FPC] v. Sierra Pacific Power Co., 350 U. S. 348 (1956) (the ‘Mobile-Sierra’ doctrine).” App. 95. Mobile-Sierra applies, § 4.C instructs, “whether the [price is challenged] by a Settling Party, a non-Settling Party, or [by] the FERC acting sua sponte.” Ibid.
FERC approved the Settlement Agreement, “finding that as a package, it presents a just and reasonable outcome for this proceeding consistent with the public interest.” 115 FERC, at 62,304. The Mobile-Sierra provision, FERC explicitly determined, “appropriately balances the need for rate stability and the interests of the diverse entities who will be subject to the [forward capacity market’s auction system].” Id., at 62,335.
*171 Six of the eight objectors to the settlement sought review in the D. C. Circuit. For the most part, the Court of Appeals rejected the objectors’ efforts to overturn FERC’s order approving the settlement. 520 F. 3d, at 467. But the objectors prevailed on the Mobile-Sierra issue: The D. C. Circuit held that Mobile-Sierra applies only to contracting parties. Id., at 478. In this Court, the parties have switched places. Defenders of the settlement, including the Mobile-Sierra provision, are petitioners; objectors to the settlement, victorious in the Court of Appeals only on the Mobile-Sierra issue, are respondents.
Because of the importance of the issue, and in light of our recent decision in Morgan Stanley, we granted certiorari, 556 U. S. 1207 (2009), to resolve this question: “[Does] Mobile-Sierra!s public-interest standard appl[y] when a contract rate is challenged by an entity that was not a party to the contract[?]” Brief for Petitioners i. Satisfied that the answer to that question is yes, we reverse the D. C. Circuit’s judgment insofar as it rejected application of Mobile-Sierra to noncontracting parties.
II
The FPA gives FERC authority to regulate the “sale of electric energy at wholesale in interstate commerce.” See 16 U. S. C. § 824(b)(1). The Act allows regulated utilities to set rates unilaterally by tariff; alternatively, sellers and buyers may agree on rates by contract. See §824d(c), (d). Whether set by tariff or contract, however, all rates must be “just and reasonable.” §824d(a). Rates may be examined by the Commission, upon complaint or on its own initiative, when a new or altered tariff or contract is filed or after a rate goes into effect. §§ 824d(e), 824e(a). Following a hearing, the Commission may set aside any rate found “unjust, unreasonable, unduly discriminatory or preferential,” and replace it with a just and reasonable rate. § 824e(a).
*172 The Mobile-Sierra doctrine originated in twin decisions announced on the same day in 1956: United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U. S. 332, and FPC v. Sierra Pacific Power Co., 350 U. S. 348. Both concerned rates set by contract rather than by tariff. Mobile involved the Natural Gas Act, which, like the FPA, requires utilities to file all new rates with the regulatory commission. 15 U. S. C. § 717c(e). In Mobile, we rejected a gas utility’s argument that the file-all-new-rates requirement authorized the utility to abrogate a lawful contract with a purchaser simply by filing a new tariff. 350 U. S., at 336-337. Filing, we explained, was a precondition to changing a rate, not an authorization to do so in violation of a lawful contract. Id., at 339-344; see Morgan Stanley, 554 U. S., at 533.
The Sierra case involved a further issue. Not only had the Commission erroneously concluded that a newly filed tariff superseded a contract rate. In addition, the Commission had suggested that, in any event, the contract rate, which the utility sought to escape, was itself unjust and unreasonable. The Commission thought that was so “solely because [the contract rate] yieldfed] less than a fair return on the [utility’s] net invested capital.” 350 U. S., at 355.
The Commission’s suggestion prompted this Court to home in on “the question of how the Commission may evaluate whether a contract rate is just and reasonable.” Morgan Stanley, 554 U. S., at 533. The Sierra Court answered the question this way:
“[T]he Commission’s conclusion appears on its face to be based on an erroneous standard. . . . [W]hile it may be that the Commission may not normally impose upon a public utility a rate which would produce less than a fair return, it does not follow that the public utility may not itself agree by contract to a rate affording less than a fair return or that, if it does so, it is entitled to be relieved of its improvident bargain. ... In such circumstances the sole concern of the Commission would seem *173 to be whether the rate is so low as to adversely affect the public interest — as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory.” 350 U. S., at 354-355 (some emphasis added).
In a later case, we similarly explained: “The regulatory system created by the [FPA] is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity.” Permian Basin Area Rate Cases, 390 U. S. 747, 822 (1968).[3]
Two Terms ago, in Morgan Stanley, 554 U. S. 527, the Court reaffirmed and clarified the Mobile-Sierra doctrine. That case presented two questions: First, does the Mobile-Sierra presumption (that contract rates freely negotiated between sophisticated parties meet the just-and-reasonable standard imposed by 16 U. S. C. §824d(a)) “apply only when FERC has had an initial opportunity to review a contract rate without the presumption?” 554 U. S., at 531. “Second, does the presumption [generally] impose as high a bar to challenges by purchasers of wholesale electricity as it does to challenges by sellers?” Id., at 531; see id., at 548. An *174 swering no to the first question and yes to the second, the Court emphasized the essential role of contracts as a key factor fostering stability in the electricity market, to the long-run benefit of consumers. Id., at 547-548, 551; see, e. g., Market-Based Rates ¶6, 72 Fed. Reg. 39906 (2007) (noting chilling effect on investments caused by “uncertainties regarding rate stability and contract sanctity”); Nevada Power Co. v. Duke Energy Trading & Marketing, L. L. C., 99 FERC ¶ 61,047, pp. 61,184, 61,190 (2002) (“Competitive power markets simply cannot attract the capital needed to build adequate generating infrastructure without regulatory certainty, including certainty that the Commission will not modify market-based contracts unless there are extraordinary circumstances.”).
Morgan Stanley did not reach the question presented here: Does Mobile-Sierra’s public interest standard apply to challenges to contract rates brought by noncontraeting parties? But Morgan Stanley’s reasoning strongly suggests that the D. C. Circuit’s negative answer misperceives the aim, and diminishes the force, of the Mobile-Sierra doctrine.
In unmistakably plain language, Morgan Stanley restated Mobile-Sierra’s instruction to the Commission: FERC “must presume that the rate set out in a freely negotiated wholesale-energy contract meets the ‘just and reasonable’ requirement imposed by law. The presumption may be overcome only if FERC concludes that the contract seriously harms the public interest.” 554 U. S., at 530. As our instruction to FERC in Morgan Stanley conveys, the public interest standard is not, as the D. C. Circuit presented it, a standard independent of, and sometimes at odds with, the “just and reasonable” standard, see 520 F. 3d, at 478; rather, the public interest standard defines “what it means for a rate to satisfy the just-and-reasonable standard in the contract context,” Morgan Stanley, 554 U. S., at 546. And if FERC itself must presume just and reasonable a contract rate re- *175 suiting from fair, arm’s-length negotiations, how can it be maintained that noncontracting parties nevertheless may escape that presumption?[4]
Moreover, the Mobile-Sierra doctrine does not overlook third-party interests; it is framed with a view to their protection. The doctrine directs the Commission to reject a contract rate that “seriously harms the consuming public.” Morgan Stanley, 554 U. S., at 545-546; see Verizon Communications Inc. v. FCC, 535 U. S. 467, 479 (2002) (When a buyer and a seller agree upon a rate, “the principal regulatory responsibility [i]s not to relieve a contracting party of an unreasonable rate, . . . but to protect against potential discrimination by favorable contract rates between allied businesses to the detriment of other wholesale customers.” (emphasis added)).
Finally, as earlier indicated, see supra, at 173-174, the D. C. Circuit’s confinement of Mobile-Sierra to rate challenges by contracting parties diminishes the animating purpose of the doctrine: promotion of “the stability of supply arrangements which all agree is essential to the health of the [energy] industry.” Mobile, 350 U. S., at 344. That dominant concern was expressed by FERC in the order on review: “Stability is particularly important in this case, which was initiated in part because of the unstable nature of [installed capacity] revenues and the effect that has on generating units, particu *176 larly those . . . critical to maintaining reliability.” 115 FERC, at 62,335. A presumption applicable to contracting parties only, and inoperative as to everyone else — consumers, advocacy groups, state utility commissions, elected officials acting parens patriae — could scarcely provide the stability Mobile-Sierra aimed to secure.[5]
We therefore hold that the Mobile-Sierra presumption does not depend on the identity of the complainant who seeks FERC investigation. The presumption is not limited to challenges to contract rates brought by contracting parties. It applies, as well, to challenges initiated by third parties.
III
The objectors to the settlement appearing before us maintain that the rates at issue in this ease — the auction rates and the transition payments — are prescriptions of general applicability rather than “contractually negotiated rates,” hence Mobile-Sierra is inapplicable. See Brief for Respondents 15-17, and n. 1 (internal quotation marks omitted). FERC agrees that the rates covered by the settlement “are not themselves contract rates to which the Commission was required to apply Mobile-Sierra.” Brief for FERC 15. But, FERC urges, “the Commission had discretion to do so,” id., at 28; furthermore, “[t]he court of appeals’ error in creating a third-party exception to the Mobile-Sierra presumption is a sufficient basis for reversing its judgment,” id., at 22. Whether the ratés at issue qualify as “contract rates,” and, if not, whether FERC had discretion to treat them analogously are questions raised before, but not ruled upon by, the Court of Appeals. They remain open for that court’s consideration on remand. See Tr. of Oral Arg. 16.
*177 * * *
For the reasons stated, the judgment of the Court of Appeals for the D. C. Circuit is reversed to the extent that it rejects the application of Mobile-Sierra to noncontracting parties, and the case is remanded for farther proceedings consistent with this opinion.

It is so ordered.

 An ISO is an independent company that has operational control, but not ownership, of the transmission facilities owned by member utilities. ISOs “provide open access to the regional transmission system to all electricity generators at rates established in a single, unbundled, grid-wide tariff____” Midwest ISO Transmission Owners v. FERC, 373 F. 3d 1361, 1364 (CADC 2004) (internal quotation marks omitted).

 The transition period runs from December 1, 2006, to June 1, 2010.

 Consistent with the lead role of contracts recognized in Mobile-Sierra, we held in United Gas Pipe Line Co. v. Memphis Light, Gas and Water Div., 358 U. S. 103, 110-113 (1958), that parties may contract out of the Mobile-Sierra presumption. They could do so, we ruled, by specifying in their contracts that a new rate filed with the Commission would supersede the contract rate. Courts of Appeals have approved an option midway between Mobile-Sierra and Memphis Light: A contract that does not allow the seller to supersede the contract rate by filing a new rate may nonetheless permit the Commission to set aside the contract rate if it results in an unfair rate of return, without a further showing that it adversely affects the public interest. See, e. g., Papago Tribal Util. Auth. v. FERC, 723 F. 2d 950, 953 (CADC 1983); Louisiana Power & Light Co. v. FERC, 587 F. 2d 671, 675-676 (CA5 1979).

 The D. C. Circuit emphasized a point no doubt true, but hardly dispositive: Contracts bind parties, not nonparties. Maine Pub. Util. Comm’n v. FERC, 520 F. 3d 464, 478 (2008) (per curiam). Mobile-Sierra holds sway, however, because well-informed wholesale-market participants of approximately equal bargaining power generally can be expected to negotiate just-and-reasonable rates, see Morgan Stanley Capital Group Inc. v. Public Util. Dist. No. 1 of Snohomish Cty., 554 U. S. 527, 545 (2008), and because “contract stability ultimately benefits consumers,” id., at 551. These reasons for the presumption explain why FERC, surely not legally bound by a contract rate, must apply the presumption and, correspondingly, why third parties are similarly controlled by it.

 The FPA authorizes "[a]ny person, electric utility, State, municipality, or State commission” to complain. 16 U. S. C. §825e (emphasis added). FERC regulations similarly permit “[a]ny person [to] file a complaint seeking Commission action.” 18 CFR §385.206(a) (2009) (emphasis added).