# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 20, 2010       Decided November 5, 2010

No. 06-1403

MAINE PUBLIC UTILITIES COMMISSION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CONNECTICUT DEPARTMENT OF PUBLIC UTILITY CONTROL, ET
AL.,
INTERVENORS

---

Consolidated with 06-1427, 07-1193

---

On Remand from the United States Supreme Court

---

*John S. Wright*, Assistant Attorney General, Office of the Attorney General for the State of Connecticut, argued the cause for petitioners. With him on the brief were *Michael C. Wertheimer*, Assistant Attorney General, *Jesse S. Reyes*, Assistant Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Vasiliki Karandrikas*, *Lisa Fink*, and *Robert A. Weishaar Jr.*

*Donald J. Sipe* and *Jonathan G. Mermin* were on the brief for intervenor Industrial Energy Consumer Group in support of petitioners.

*Robert H. Solomon*, Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Thomas R. Sheets*, General Counsel, and *Lona T. Perry*, Senior Attorney.

*John N. Estes III* argued the cause for intervenors Entergy Nuclear Generation Company, LLC, et al. in support of respondent. With him on the brief were *John L. Shepherd Jr.*, *Christopher C. O'Hara*, *David Talmage Musselman*, *Aaron James Bullwinkel*, *Neil L. Levy*, *David G. Tewksbury*, and *Tim W. Muller*.

*Sherry A. Quirk*, *Monica M. Berry*, and *Raymond W. Hepper* were on the brief for intervenor ISO New England Inc. in support of respondent.

Before: ROGERS and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the court filed by SILBERMAN, *Senior Circuit Judge*.

SILBERMAN, *Senior Circuit Judge*: These consolidated petitions for review are before us once again. The Maine Public Utilities Commission and the Attorneys General of Connecticut and Massachusetts, representing energy customers, challenged FERC's approval of a settlement agreement that redesigned New England's electricity capacity market. Although we rejected most of petitioners' challenges, we granted their petition regarding the argument that the settlement agreement's *Mobile-Sierra* provision – which requires FERC to adjudicate

challenges to rates resulting from an auction procedure arising out of the settlement agreement under the *Mobile-Sierra* public interest standard – deprived non-settling parties of their rights under the Federal Power Act to challenge rates under the statute's presumably more searching "just and reasonable" standard. *See Me. Pub. Utils. Comm'n v. FERC*, 520 F.3d 464, 477 (D.C. Cir. 2008) (*per curiam*). We held that the *Mobile-Sierra* doctrine could not apply to rate challenges brought by non-parties to the settlement agreement. *See id.* The Supreme Court granted *certiorari* on this general issue and reversed. *See NRG Power Mktg., LLC v. Me. Pub. Utils. Comm'n*, 130 S. Ct. 693, 696-97 (2010). It identified, however, two questions concerning the *Mobile-Sierra* provision that had been raised before, but not ruled on by, us, and remanded those issues for our consideration. *See id.* at 701. Because the Commission failed to address those issues in the challenged orders, we now remand the orders to FERC.

I

This case has characteristics of a chameleon; it has changed its colors – and its shape – at each stage of the proceedings. As we have previously explained, the basic dispute relates to New England's electrical capacity market, in which an electricity provider purchases an option to buy electricity from a generator rather than purchasing the electricity directly. That market had been beset by problems, including a supply of capacity that was barely sufficient to meet the region's demand, and FERC, electricity generators, electricity purchasers, and power customers engaged in several attempts to resolve those issues. *See Devon Power LLC*, 115 FERC ¶ 61,340, at 62,315 (2006). In response to their attempts, FERC required the New England Independent System Operator, the entity operating the electricity transmission system in New England, to develop a new market mechanism that set prices separately by geographic sub-region.

Under this new mechanism, prices would be highest in the regions with the most severe capacity shortages, encouraging new entries to the market. *See Devon Power LLC*, 107 FERC ¶ 61,240, at 62,022 (2004). This mechanism proved extremely controversial, and FERC apparently established settlement procedures to allow all affected parties to develop a different market mechanism. After four months of negotiations, a settlement was reached, which FERC approved. *See Devon Power LLC*, 115 FERC at 62,306.

The key feature of the settlement agreement is the Forward Capacity Market, which entails annual auctions that set the rates for electricity "capacity" (the option of buying a quantum of power). In these auctions, which are held three years in advance of when capacity is needed, electricity providers buy capacity at a standard rate, and must purchase enough capacity to maintain the reliability of the electricity grid. *See id.* As noted, the settlement agreement provided that challenges to the resulting auction rates – whether brought by a settling party, a non-settling party, or the Commission – would be "adjudicated under the highly-deferential *Mobile-Sierra* 'public interest' standard rather than the usual 'just and reasonable' standard" of the Federal Power Act. *Me. Pub. Utils. Comm'n*, 520 F.3d at 469.

It should be noted that, at the outset of this litigation, it was common ground among all parties that the normal statutory "just and reasonable" standard was a different standard than the "public interest" standard. This belief no doubt was shaped by the eponymous cases of the *Mobile-Sierra* doctrine, in which the Supreme Court addressed the Commission's authority to modify rates set by contract. In *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332 (1956), the Court held that under the Natural Gas Act, a utility could not abrogate a lawful contract with a purchaser merely by filing a new rate. 350 U.S. at 336-37. And in *Federal Power Commission v. Sierra Pacific*

*Power Co.*, 350 U.S. 348 (1956), it applied *Mobile* to the Federal Power Act, and confronted the question of how the Commission evaluates when a contract rate is just and reasonable. 350 U.S. at 352-53. The Court held that a utility that had entered into a contract setting rates could not subsequently seek a greater return by asserting the contract rate was inadequate to meet the just and reasonable standard. *See id.* at 354-55. It could only escape that rate if the utility could show the "public interest" was jeopardized – which apparently meant the utility faced something close to insolvency, the rate created an excessive burden for consumers, or the rate was unduly discriminatory. *See id.* We subsequently extended that hurdle symmetrically to challenges brought by purchasers, in addition to challenges brought by sellers. *See Potomac Elec. Power Co. v. FERC*, 210 F.3d 404-05 (D.C. Cir. 2000).

It appeared to us that application of the *Mobile-Sierra* doctrine was a form of estoppel, *i.e.*, a contracting party was not at liberty – short of extraordinary circumstances – to avoid its negotiated contract rate. And therefore we framed the *Mobile-Sierra* issue in our previous opinion as whether "the Commission [may] approve a settlement agreement that applies the highly-deferential 'public interest' standard to rate challenges brought by non-contracting third parties." *Me. Pub. Utils. Comm'n*, 520 F.3d at 477. FERC's orders had been somewhat ambiguous as to why the Commission decided it could impose the *Mobile-Sierra* standard on non-settling parties. But we found no need to parse FERC's various explanations, because we concluded that the Commission could not approve the settlement agreement's *Mobile-Sierra* clause that bound non-settling parties.

Then, before the Supreme Court, the ground shifted. Three months after we issued our original opinion in this case, the Supreme Court decided *Morgan Stanley Capital Group Inc. v.*

*Public Utility District No. 1 of Snohomish County*, 128 S. Ct. 2733 (2008), which held that the *Mobile-Sierra* public interest standard was only an application of the just and reasonable standard to contract, not a different standard. 128 S. Ct. at 2740. In light of that decision, the Court took *certiorari* in this case to answer a single question: whether "*Mobile-Sierra*'s public-interest standard appl[ies] when a contract rate is challenged by an entity that was not a party to the contract." *NRG Power Mktg., LLC*, 130 S. Ct. at 698 (internal quotation marks omitted). The Court, therefore, shifted the focus of the case from the settlement agreement to the nature of the auction rates resulting from the settlement agreement.

Following the Supreme Court's lead, the parties presented arguments about whether *Mobile-Sierra* applied only to contract rates. Maine Public Utilities Commission and its allies, respondents before the Supreme Court, squarely contended for the first time (undoubtedly in light of *Morgan Stanley)* that the auction rates were *not* contract rates (a point that they had not specifically made before, except by adopting an argument in an intervenor's brief). Petitioners before the Supreme Court, who had been intervenors defending the settlement agreement before us, now argued (again surely influenced by *Morgan Stanley*) that the rates *were* contract rates. And FERC, for its part, took a third position: the rates were *not* contract rates, yet it nevertheless had authority to approve the *Mobile-Sierra* clause as a matter of its discretion.

Relying on *Morgan Stanley*, the Supreme Court concluded that the *Mobile-Sierra* doctrine "is not limited to challenges to contract rates brought by contracting parties. It applies, as well, to challenges initiated by third parties." *NRG Power Mktg., LLC*, 130 S. Ct. at 701. And therefore it implicitly, but necessarily, rejected our conclusion that FERC could not approve a *Mobile-Sierra* clause in a settlement agreement that

bound non-settling parties. That is, if non-contracting parties are bound to challenge contract rates under *Mobile-Sierra*, it must be that FERC can approve a settlement agreement requiring adjudication of any rates resulting from that settlement agreement under *Mobile-Sierra* if the resultant rates are contract rates. But the Supreme Court's holding did not resolve this case, because as the parties' positions before it made clear, there was still an open question about whether the auction rates resulting from the settlement agreement were the type of rates to which *Mobile-Sierra* applied. The Court declined to consider this issue, reasoning that it had been "raised before, but not ruled upon by, the Court of Appeals." *Id.* The Supreme Court therefore asked us to consider that issue in the first instance. *See id.* The parties now present on remand the same arguments deployed in the Supreme Court.[1]

\* \* \*

It is necessary to describe this jurisprudential Kabuki dance to deal both with a jurisdictional issue, as well as with the merits. The intervenors defending the settlement agreement (although not FERC) contend that we lack jurisdiction to consider petitioners' argument that the auction rates are not

---

[1] One of the most contentious issues in this case was the status of the "transition payments" paid to electricity generators to cover the three-year gap between the first auction and the time when the capacity purchased in that auction is provided. *See Me. Pub. Utils. Comm'n*, 520 F.3d at 469. The settlement agreement obligated FERC to adjudicate challenges to these payments under *Mobile-Sierra* as well. Although petitioners argue that applying *Mobile-Sierra* to the transition payments violates their rights under the Federal Power Act, because the last payments were made on June 1, 2010, petitioners can no longer challenge them, mooting this argument. *See L.A. County v. Davis*, 440 U.S. 625, 631 (1979). Petitioners appeared to concede as much at oral argument. *See* Oral Arg. Recording at 22:16-20.

contract rates to which *Mobile-Sierra* can apply because petitioners did not make that precise argument before FERC – only intervenors opposing the settlement did. And our cases are quite clear that generally we do not have jurisdiction under the Federal Power Act to consider an argument not raised by a petitioner *before FERC*; an intervenor cannot fill the jurisdictional gap. *See, e.g.*, *Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC*, 876 F.2d 109, 113 (D.C. Cir. 1989); *see also* 16 U.S.C. § 825*l*(b).

It would be rather anomalous at this point for us to hold that we lacked jurisdiction to consider the issues the Supreme Court has explicitly remanded to us. Moreover, given the shifts in the parties' positions – including FERC's – as well as the unanticipated change in the Supreme Court's *Mobile-Sierra* jurisprudence, it might be thought overly technical to bar petitioners' argument. But it is unnecessary to consider these factors. Intervenors, in asserting that petitioners did not raise the precise argument that the auction rates are not contract rates before FERC, are slicing the salami too thinly. After all, petitioners did argue before FERC that the *Mobile-Sierra* provision in the settlement agreement "deprives non-settling parties of their rights under Section 206 of the Federal Power Act," an argument that applies whether or not the auction rates are regarded as contract rates.[2] Interestingly, FERC, when presented with intervenors' more precise formulation that the

---

[2] For this reason, intervenors' alternative argument that petitioners waived their non-contract rate argument in their opening brief is without merit. In that brief, as before FERC, petitioners asserted that the settlement agreement deprives them of their statutory rights. *See* Petitioners' Opening Brief at 51-54. We cannot imagine an argument would be specific enough to satisfy section 825*l*(b), yet not satisfy our prudential requirement that a party raise an argument in its opening brief.

auction rates were not contract rates, said "[w]e also reject [intervenors'] contention that market rules and tariffs are not contracts to which *Mobile-Sierra* can apply," yet ambiguously also said that "tariffs have been held to be analogous to contracts." *Devon Power LLC*, 117 FERC ¶ 61,133, at 61,727 (2006). The Commission apparently did not see intervenors' contention that the auction rates were not contract rates as separate from petitioners' general challenge to the *Mobile-Sierra* clause because it never actually resolved the former question, which likely explains why FERC did not join the jurisdictional objection.

II

As we noted, the Supreme Court granted *certiorari* to determine whether the *Mobile-Sierra* public interest standard applied to a challenge to contract rates brought by a non-contracting party. And that issue was affected decisively by *Morgan Stanley*, which the Supreme Court decided after we issued our previous opinion in this case. A freely-negotiated contract rate, the Court held in *Morgan Stanley*, was presumptive evidence that the rate was just and reasonable because it reflected market forces. *See Morgan Stanley*, 128 S. Ct. at 2739-40, 2746-47. Based on that reasoning, the Supreme Court concluded in this case that *Mobile-Sierra* could apply to a rate challenge brought by a non-contracting party. *See NRG Power Mktg.*, 130 S. Ct. at 701.

We admit to being somewhat uncertain about the implications of the Supreme Court's opinion in our case because although it states, following *Morgan Stanley*, that the public interest standard is merely an application of the just and reasonable standard, *see id.* at 700, its accurate description of *Sierra* makes clear that there an examination of the disputed rate under the just and reasonable standard would have led the

Commission to overturn the rate, where adjudication under the public interest standard would not have, *see id.* at 699. It therefore appears that if the *Mobile-Sierra* doctrine is only an application of the just and reasonable standard – not a separate standard – it is true only at some theoretical level. Be that as it may, since the Supreme Court invigorated the *Mobile-Sierra* doctrine, and remanded for a determination whether the auction rates were protected against attack, either because they are freely-negotiated contract rates or because FERC has discretion to apply *Mobile-Sierra* to non-contract rates, it is obvious that the Court is of the view that the *Mobile-Sierra* public interest standard confers an advantage on a party claiming it applies.

Doctrinal difficulties aside, we turn to the questions the Supreme Court put to us: "[w]hether the rates at issue qualify as 'contract rates,' and, if not, whether FERC had discretion to treat them analogously." *Id.* at 701. FERC's counsel now concedes flatly that the auction rates are not contract rates, but rather closely resemble a conventional "cost based tariff rate" because during the Forward Capacity Market auction, a capacity buyer is simply assessed a standard market rate. Unlike a typical auction, then, the buyers do not agree to pay a seller a specific price set by a voluntary bid, so therefore no voluntary agreements develop. Nevertheless, FERC's counsel argues that under the logic of *Morgan Stanley*, the Commission always has discretion to approve a clause that provides protection against an attack on these rates as unjust or unreasonable by imbuing them with the more difficult to challenge "public interest" cloak.[3] Exercising that discretion is appropriate here, FERC's counsel believes, because the auction rates "share with freely negotiated contracts certain market based features that tend to assure just and reasonable rates." Respondent's Supplemental Brief at 13.

---

[3] FERC's brief rather confusingly refers to the public interest standard as a stricter standard.

We cannot decide whether FERC's counsel's current position is reasonable under the APA because it is certainly obvious – whatever else is confusing about this case – that FERC never articulated *in its orders* a rationale for its discretion to approve a *Mobile-Sierra* clause outside the contract context, or an explanation for exercising that discretion here. *See Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397 (1974) ("[W]e cannot 'accept counsel's *post hoc* rationalizations for agency action . . . .'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962))). However FERC justifies its decision to approve the *Mobile-Sierra* clause, FERC must explain why, if the auction rates are not contract rates, they are entitled to *Mobile-Sierra* treatment. Just how do the auction rates reflect market conditions similar to freely-negotiated contract rates? Or does FERC base its asserted discretion on some other ground?

For the foregoing reasons, FERC's orders approving the settlement agreement's *Mobile-Sierra* provision are remanded for further proceedings.

*So ordered.*