# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 7, 2014        Decided April 14, 2015

No. 12-1382

PUBLIC SERVICE ELECTRIC AND GAS COMPANY, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

JERSEY CENTRAL POWER & LIGHT COMPANY, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*John Lee Shepherd Jr.* argued the cause for petitioners. With him on the briefs were *Jodi L. Moskowitz*, *Gary E. Guy*, *John Longstreth*, *Donald A. Kaplan*, and *William M. Keyser*.

*Randall B. Palmer*, *Kenneth G. Jaffe*, and *Michael E. Ward* were on the reply brief for intervenors Jersey Central Power & Light Company, et al. in support of petitioners.

*Lona T. Perry*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

Before: SRINIVASAN, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Petitioners are fourteen electrical transmission companies operating as members of the regional transmission organization PJM Interconnection, LLC. As incumbent members of the organization, petitioners contend that PJM's governing agreements afford them a right of first refusal for proposed transmission facility expansions or upgrades within their zones. The Federal Energy Regulatory Commission ("FERC") held that no such right of first refusal exists and that PJM may designate third-party developers to construct transmission facilities within incumbent members' zones. The incumbent transmission owners petition for review, arguing that the Commission lacks jurisdiction over transmission facility development and that the Commission's interpretation of PJM's governing agreements is arbitrary, capricious, or otherwise not in accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706(2).

We held this case in abeyance pending the decision in *South Carolina Public Service Authority v. FERC*, 762 F.3d 41 (D.C. Cir. 2014). Now that there is a final decision in that case, we remove this case from abeyance. After reviewing the original and supplemental briefing, and with the benefit of oral argument, we dismiss the petition for review because

Article III of the Constitution does not permit us to issue an advisory opinion.

**I.**

Petitioners are members of PJM Interconnection, LLC, a regional transmission organization "to which transmission providers . . . transfer operational control of their facilities for the purpose of efficient coordination." *Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 554 U.S. 527, 536 (2008). Regional transmission organizations like PJM combine multiple utility power grids into a single transmission system to "reduce technical inefficiencies caused when different utilities operate different portions of the grid independently." *Id.* Formed in 1927, PJM is the oldest and largest regional transmission organization. *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 5 (D.C. Cir. 2002). Today, PJM coordinates the movement of wholesale electricity in thirteen mid-Atlantic states and the District of Columbia. *Maryland Pub. Serv. Comm'n v. FERC*, 632 F.3d 1283, 1284 (D.C. Cir. 2011) (per curiam).

"Among its duties, PJM is responsible for preventing interruptions to the delivery of electricity . . . by ensuring that its system has sufficient generating capacity." *Id.* PJM fulfills this duty in part by upgrading and enhancing its system in accordance with procedures set forth in its governing agreements, which include: the Regional Transmission Expansion Plan in PJM's Operating Agreement, the Consolidated Transmission Owners Agreement ("Owners Agreement"), and the PJM Open Access Transmission Tariff ("Tariff").

Petitioners seek review of four FERC orders from two proceedings. In both proceedings, non-incumbent developers

argued that no right of first refusal existed within PJM's governing agreements for incumbent transmission owners.

## A.

The first proceeding arose on a petition to the Commission by Primary Power, LLC, a non-incumbent developer hoping to build the Grid Plus project, a proposed expansion project comprised of four installations within the PJM system. Primary Power sought FERC's assurance that if it were selected for the project, it would be eligible to employ cost-based rate recovery in the operation of the project. Incumbent members of PJM, petitioners before us, opposed the petition, arguing that Section 1.5.6 of the Regional Transmission Expansion Plan created a right of first refusal which would be violated by the grant of rights to the newcomer. Section 1.5.6(f) states, in pertinent part:

> For each enhancement or expansion that is included in the recommended plan, the plan shall consider [a number of selection factors] . . . and designate one or more Transmission Owners or other entities to construct, own and, unless otherwise provided, finance the recommended transmission enhancement or expansion. To the extent that one or more Transmission Owners are designated to construct, own and/or finance a recommended transmission enhancement or expansion, the recommended plan shall designate the Transmission Owner that owns transmission facilities located in the Zone where the particular enhancement or expansion is to be located.

FERC rejected the incumbent transmission owners' arguments in *Primary Power, LLC*, 131 FERC ¶ 61,015

(2010) (order on petition for declaratory order). Interpreting PJM's Operating Agreement, FERC explained that Sections 1.5.7(c)(iii) and 1.5.6(f) of the Agreement allowed non-incumbent developers to compete for and construct projects under the expansion protocol. *Id.* PP 62-65. FERC held that "the PJM Tariff permits, but does not require, PJM to designate Primary Power, an entity other than an incumbent transmission owner, as the entity to build Grid Plus." *Id.* P 62. FERC concluded that Section 1.5.6(f) did not create a right of first refusal for incumbent transmission owners because the "shall designate" clause requiring PJM to assign projects to transmission owners who own facilities in the zone where the project is located only "applies by its own terms 'to the extent that one or more Transmission Owners are designated.'" *Id.* P 65 (quoting Operating Agreement § 1.5.6(f)). The "shall designate" clause, FERC further explained, does not apply when PJM designates non-incumbent "other entities" to construct the project. *Id.* P 64.

Addressing the recovery of development costs, FERC acknowledged that merchant transmission facilities are not eligible for cost-based rates under the PJM Tariff. *Id.* P 68. But if PJM includes the Grid Plus project in its expansion plan, FERC explained that Primary Power "would be eligible to seek cost-based rate recovery as would any other transmission owner." *Id.* P 70. In other words, FERC noted that the "PJM's Tariff contains no prohibition on a non-incumbent party becoming a transmission owner to receive cost-based rates." *Id.*

Incumbent transmission owners timely sought rehearing. Among other things, they argued that FERC ignored their exclusive right to build and operate all non-merchant projects in their own zones, and FERC misinterpreted the "other entity" language from Section 1.5.6(f) of the PJM Operating Agreement. Incumbent transmission owners also suggested

that FERC exceeded its statutory authority when it required them to give up rights that they did not cede to PJM.

FERC denied the rehearing request and affirmed its previous order. *Primary Power, LLC*, 140 FERC ¶ 61,052 (2012) (order denying rehearing). Although the language from the expansion protocol is ambiguous, FERC reiterated that it neither established a right of first refusal for incumbent transmission owners nor precluded a non-incumbent developer from recovering cost-based rates if selected for a project under PJM's expansion plan. *Id.* P 35. In light of PJM's obligation to operate in a non-discriminatory manner, FERC interpreted PJM's expansion protocol as "provid[ing] an opportunity for a wide variety of participants and different business models." *Id.* FERC stressed that, while incumbent transmission owners may participate in the process, PJM's protocol neither guaranteed incumbent owners the right to construct projects in their zones nor required them to undertake such construction. *Id.*

**B.**

In the second proceeding under review, non-incumbent developer Central Transmission, LLC, filed a complaint pursuant to Section 206 of the Federal Power Act ("FPA"), alleging that the PJM Tariff is unjust and unreasonable because it prevents Central Transmission from constructing a proposed transmission project and receiving cost-based rate recovery for it. Incumbent transmission owners protested, arguing that the complaint should be dismissed because Central Transmission did not satisfy the burden of proof under Section 206. The right of first refusal, incumbent owners explained, did not create a barrier to entry because non-incumbent developers like Central Transmission were free to build PJM expansion projects as merchant developers.

FERC dismissed the complaint, concluding that the Section 206 proceeding was unnecessary. *See Central Transmission, LLC v. PJM Interconnection, LLC*, 131 FERC ¶ 61,243 (2010) (order on complaint). Applying its decision in *Primary Power*, 131 FERC ¶ 61,015 (2010), FERC explained that PJM's governing agreements allowed non-incumbent parties like Central Transmission to become transmission owners eligible for cost-based rates. *Central Transmission, LLC*, 131 FERC ¶ 61,243, P 46. Consequently, FERC saw no need to revise the PJM Tariff or Operating Agreement. *Id.* P 48.

Petitioner Public Service Electric and Gas Company ("PSEG") timely sought rehearing. Taking no issue with the ultimate result (dismissal of the complaint), PSEG instead objected to the Commission's reliance on the *Primary Power* order. The *Central Transmission* and *Primary Power* orders, PSEG argued, ignored incumbent transmission owners' exclusive right to build projects in their own zones. According to PSEG, the Commission's reading of PJM's governing agreements was simply wrong.

The Commission denied PSEG's rehearing request on the same day that it denied rehearing in *Primary Power*. *See Central Transmission, LLC v. PJM Interconnection, LLC*, 140 FERC ¶ 61,053 (2012) (order on rehearing). Consistent with its *Primary Power* order, the Commission reiterated that PJM's expansion protocol does not grant incumbent transmission owners a right of first refusal that would prevent non-incumbent transmission developers from building an economic project. *Id.* P 17.

## C.

As noted above, we held this case in abeyance pending the decision in *South Carolina Public Service Authority v. FERC* because we hoped to "benefit from resolution of the

question of FERC's authority to prohibit a regional transmission organization's tariff from including a right of first refusal for incumbent transmission owners to build and operate transmission facilities." *Pub. Serv. Elec. & Gas Co., et al. v. FERC*, No. 12-1382 (D.C. Cir. Jan. 15, 2014) (order holding case in abeyance). In *South Carolina Public Service Authority v. FERC*, petitioners challenged the Commission's authority to adopt Order No. 1000, which required transmission providers to remove from their "jurisdictional tariffs and agreements any provisions that establish a federal right of first refusal for an incumbent transmission developer to construct new regional transmission facilities included in a regional transmission plan." Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities, Order 1000, 76 Fed. Reg. 49,842, 49,846 (Aug. 11, 2011).

The *South Carolina* petitioners argued that Section 206 of the FPA prevented FERC from removing rights of first refusal under Order No. 1000 because the rights of first refusal were too attenuated from a "practice" "affecting . . . rate[s]." *S.C. Pub. Serv. Auth.*, 762 F.3d at 84. This Court applied the familiar two-step framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), rejected petitioners' argument, and held "that the removal mandate is a legitimate exercise of the Commission's authority." *S.C. Pub. Serv. Auth.*, 762 F.3d at 72.

While this petition was pending, FERC directed PJM to comply with Order No. 1000 and remove or revise "any provision that could be read as supplying a federal right of first refusal for any type of transmission project that is selected in the regional transmission plan for purposes of cost allocation." *PJM Interconnection, LLC*, 142 FERC ¶ 61,214, P 222. PJM complied, and, as of the January 1, 2014 effective date, PJM's governing agreements no longer contain

language that could be read to create a right of first refusal for incumbent transmission owners. *PJM Interconnection, LLC*, 147 FERC ¶ 61,128, P 29. Because we are now left interpreting superseded language from PJM's governing agreements, FERC contends that this case no longer presents a live controversy and any decision at this time would constitute an impermissible advisory opinion. Resp't Supp'l Br. 12 (citing *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982)). For the reasons explained below, we agree.

## II.

"'[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.'" *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (quoting C. Wright, Federal Courts 34 (1963)). To satisfy the firmly established Article III case or controversy requirement, "there must be a live controversy at the time" we review the case. *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). It is not enough that there may have been a live controversy when the petitioners first filed their appeal. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987); *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011).

Petitioners concede that their jurisdictional argument fails under *South Carolina Public Service Authority v. FERC*, yet suggest that there is still a live controversy because nothing from that case impacted petitioners' argument that FERC's interpretation of PJM's governing agreements was arbitrary and capricious. Pet'rs Supp'l Br. 4–5. If we do not address the merits of their argument, petitioners explain, any future challenge to the *Central Transmission* and *Primary Power* orders will amount to an impermissible collateral attack on those orders. Pet'rs Reply Br. 17 (citing *Pacific Gas & Elec. Co. v. FERC*, 533 F.3d 820, 825 (D.C. Cir. 2008); *Wisc. Public Power, Inc. v. FERC*, 493 F3d 239, 265-66 (D.C. Cir. 2007)). While petitioners are no doubt correct that our

decision today ends any direct review of the FERC decisions before us, that does not inherently preclude this court from answering similar questions should they arise in the future in a live controversy.

Indeed, petitioners are involved in ongoing litigation challenging FERC's compliance orders that required them to remove any provision that could be read as supplying a right of first refusal from PJM's governing agreements. *See American Transmission Systems, Inc.*, *et al. v. FERC*, Nos. 14-1085 & 14-1136 (D.C. Cir. filed May 27, 2014). That case involves the interpretation of the same language from the now-superseded agreements at issue in this case. *See PJM Interconnection, LLC*, 142 FERC ¶ 61,214, PP 221-24; *PJM Interconnection, LLC*, 147 FERC ¶ 61,128, PP 94-103. Petitioners explain: "The chief question presented in that case is whether FERC violated the *Mobile-Sierra* doctrine by directing PJM and the PJM Transmission Owners (including the Petitioners in this case) to remove or change the same provisions of PJM's governing agreements and PJM Tariff whose meaning is disputed in this petition for review." Pet'rs Supp'l Br. 5.

The *Mobile-Sierra* doctrine requires FERC to presume "that a rate set by a freely negotiated wholesale-energy contract meets the just and reasonable requirement" from the FPA, 16 U.S.C. § 824d(a). *NRG Power Marketing, LLC v. Maine Pub. Util. Comm'n*, 558 U.S. 165, 167 (2010) (internal quotation marks omitted). When it clarified the impact of Order No. 1000, FERC explained that it would not require "transmission providers to eliminate a federal right of first refusal before the Commission makes a determination regarding whether an agreement is protected by a *Mobile-Sierra* provision." Transmission Planning and Cost Allocation, 77 Fed. Reg. 32,184, 32,245 (May 31, 2012). In *South Carolina Public Service Authority v. FERC*, this Court

deferred consideration of "whether or how *Mobile-Sierra* will ultimately apply to particular contracts" because the effects of the order had not been felt by the parties. 762 F.3d at 81 (citing *Associated Gas Distribs. v. FERC*, 824 F.2d 981, 1007 (D.C. Cir. 1987)).

Unlike the petitioners in *South Carolina*, petitioners in this case have felt the effects of the order because FERC concluded that the disputed provisions from PJM's governing agreements were "not in compliance with Order No. 1000's requirement to eliminate any federal right of first refusal" and directed PJM to remove the provisions in its compliance order. *PJM Interconnection, LLC*, 142 FERC ¶ 61,214, P 221. FERC's interpretation of PJM's governing agreements as they existed before January 1, 2014 only presents a live controversy to the extent that it is coupled with, and thus impacts, petitioners' ongoing *Mobile-Sierra* challenge. But petitioners' *Mobile-Sierra* challenge is not directly before us—instead, it is present in *American Transmission Systems, Inc.*, *et al. v. FERC*. Consequently, we conclude that the issue before us (the proper interpretation of the superseded language from PJM's governing agreements) does not present a live controversy.

\* \* \*

With no live controversy between adverse parties, we conclude that any decision issued at this time would constitute an impermissible advisory opinion. We must therefore dismiss incumbent transmission owners' petition for review.

*So ordered.*