# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—

**No. 21-1166**

**September Term, 2021**

Filed On: August 9, 2022

INDEPENDENT POWER PRODUCERS OF NEW YORK, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MULTIPLE INTERVENORS,
INTERVENOR

—

On Petition for Review of an Order
of the Federal Energy Regulatory Commission

—

Before: TATEL,[*] MILLETT and RAO, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record and on the briefs and oral arguments of the parties. The court has afforded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the petition for review be **GRANTED**.

Independent Power Producers of New York, Inc. ("Independent Power"), a trade association of electricity generators, petitions for review of an order of the Federal Energy Regulatory Commission ("FERC") denying in part a rate filing submitted by the New York Independent System Operator, Inc. ("NYISO"). We hold that FERC's order was insufficiently reasoned and must be set aside.

## I.

NYISO oversees the New York electricity transmission grid and manages the State's wholesale electricity marketplace. It conducts monthly capacity auctions at which electricity

---

[*] Judge Tatel assumed senior status after this case was argued and before the date of this judgment.

providers (e.g., generators) bid for the right to supply wholesale electricity to consumers (e.g., utilities) in the future. At these auctions the price of capacity turns, in large part, on NYISO's estimate of the net annual cost of a hypothetical "peaking plant" in New York.[1] *See TC Ravenswood, LLC v. FERC*, 741 F.3d 112, 114–15 (D.C. Cir. 2013). To calculate this net annual cost, NYISO's Services Tariff requires it to estimate the total lifetime cost of building and operating a peaking plant, divide that figure by the projected number of years such a plant will remain operational, and then subtract the plant's expected annual revenues. *See* NYISO Tariff § 5.14.1.2.2. NYISO refers to the resulting sum as the plant's "cost of new entry." The price of capacity at auction increases as NYISO's cost of new entry estimate increases. *See Elec. Consumers Res. Council v. FERC* ("*ELCON*"), 407 F.3d 1232, 1235 (D.C. Cir. 2005). NYISO's Tariff requires it to submit a current estimate of the cost of new entry for this hypothetical peaking plant to FERC every four years. NYISO Tariff § 5.14.1.2.2.

This case centers on NYISO's filing for the 2021–2025 period, which it submitted in November 2020. As in past years, NYISO used a gas-fired peaking plant as the model for its cost of new entry calculation.[2] But whereas in previous years it estimated that such a resource would have an "amortization period" (i.e., average commercial lifespan) of twenty years, in its 2020 filing, NYISO shortened its estimate to seventeen years. As NYISO pointed out, New York had recently passed the Climate Leadership and Community Protection Act ("Climate Act"). *See* 2019 N.Y. Sess. Laws ch. 106 (McKinney) (codified in relevant part at N.Y. PUB. SERV. LAW § 66-p). The Climate Act directed that, by June 30, 2021, New York's Public Service Commission ("PSC") "shall establish a program to require that … by the year two thousand forty … the statewide electrical demand system will be zero emissions." N.Y. PUB. SERV. LAW § 66-p(2). In other words, the Act required the PSC to introduce regulations to ensure that, by 2040, the consumption of electricity throughout the State will produce zero carbon emissions. In crafting these regulations, the Act authorized the PSC to "modify the obligations of jurisdictional load serving entities and/or the [Act's emission] targets" if they impede the delivery of "safe and adequate electric service." *Id.* It also permitted the PSC to "temporarily suspend or modify the [regulatory] obligations" placed on power plants if they are "imped[ing] the provision of safe and adequate electric service." *Id.* § 66-p(4).

In its 2020 filing, NYISO explained that, in light of the Climate Act and the PSC's impending regulations, a gas-fired peaking plant was unlikely to remain in service beyond 2039. Although the Act did not expressly require "all existing fossil-fired generation [to] cease operation" by 2040 and although "retrofitting options" to convert fossil-fueled plants into non-emitting ones might one day become available, the PSC had not clarified what steps fossil-fueled plants could take to remain in operation after 2039, nor had it exercised its discretion to modify the Act's target. In NYISO's view, the Climate Act therefore "requires electricity demand in New York to be served by 100% zero-emission resources by January 1, 2040." "Thus the developer of a fossil peaking plant would face substantial uncertainty about the financial returns of a fossil peaking plant … starting in 2040." NYISO concluded that a gas-fired plant built between 2021 and 2025 would have, on average, a seventeen-year lifespan.

---

[1] A peaking plant is one built to provide electricity only in moments of maximum grid usage. NYISO Tariff § 5.14.1.2.2.

[2] No party to this case contests NYISO's decision to model the cost of new entry on a gas-fired plant.

After considering NYISO's filing alongside comments from NYISO's Market Monitoring Unit ("MMU"), among others, FERC rejected NYISO's proposed amortization period because it was "premised on the speculative assumption that all fossil-fueled resources will cease operation in 2040." *N.Y. Indep. Sys. Operator, Inc.*, 175 FERC ¶ 61,012 at P 161 (2021) [Demand Curve Order]. FERC directed NYISO to submit an amended filing, substituting a twenty-year amortization period for its seventeen-year one. *See id.* at P 2.

Independent Power requested rehearing. FERC did not revisit its initial order within thirty days, so it became final by operation of law. *See* 16 U.S.C. § 825*l*(a). Independent Power then timely petitioned for review, arguing that FERC's order was "arbitrary, capricious, [and] not in accordance with law" in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). An association of New York electricity consumers intervened on behalf of FERC. We have jurisdiction under 16 U.S.C. § 825*l*(b).

## II.

### A.

Under Section 205 of the Federal Power Act, NYISO bore the burden of showing that its filing was "just and reasonable." *Id.* § 824d(e); *see Ala. Power Co. v. FERC*, 993 F.2d 1557, 1571 (D.C. Cir. 1993). FERC had previously approved NYISO's decision to index the price of capacity to the net cost of a peaking plant as just and reasonable. *See ELCON*, 407 F.3d at 1233–35. Therefore, NYISO needed to show that its amortization period represented a reasonable estimate of the number of years that an investor would expect a gas-fired plant built in New York between 2021 and 2025 to remain commercially viable.

FERC's "authority to review rates [under Section 205 is] limited to an inquiry into whether the rates proposed … are reasonable—and not … whether a proposed rate schedule is more or less reasonable than alternative rate designs." *City of Bethany v. FERC*, 727 F.2d 1131, 1136 (D.C. Cir. 1984). A "just and reasonable rate is one that falls within" a "zone of reasonableness." *Me. Pub. Utils. Comm'n v. FERC*, 520 F.3d 464, 471 (D.C. Cir. 2008) (per curiam) (cleaned up), *rev'd on other grounds*, 558 U.S. 165 (2010). If FERC determines a Section 205 filing does not fall within that zone of reasonableness, it must explain why, and its explanation must be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

### B.

In this case, FERC claimed NYISO's filing was unreasonable because it was based on a misreading of the Climate Act and was therefore inconsistent with NYISO's Tariff. *See* Demand Curve Order at P 161. In FERC's view the Act did *not* require all fossil-fueled plants to cease operations before 2040, so NYISO should have continued using its standard twenty-year amortization period to estimate a peaking plant's cost of new entry. FERC gave three reasons for this position. None was sufficient to demonstrate inconsistency with NYISO's Tariff and justify FERC's order.

First, FERC suggested that at least some fossil-fueled plants may remain in service after 2039 because "the [Act's] requirements may be modified, as necessary, to allow fossil-fueled resources to remain in service beyond 2040 as a means of ensuring system reliability." *Id.* But at the time of NYISO's filing, the PSC had not exercised its discretion to "modify" the Act's zero-emission

target and had given no indication it ever would. N.Y. PUB. SERV. LAW § 66-p(2). That regulatory inaction is key because as NYISO noted in its filing—and indeed, as FERC acknowledged in its order—FERC's precedents required NYISO to "take into account currently effective laws and regulations and avoid speculating about laws and regulations in the future." Demand Curve Order at P 161; *see N.Y. Indep. Sys. Operator, Inc.*, 146 FERC ¶ 61,043 at P 74 (2014) ("While there is always a risk that regulations will change in the future, [NYISO] cannot base [its filings] on speculation that … New York State regulators will act at some point in the future.").

FERC's decision to reject NYISO's filing based on the possibility that the PSC might alter the Act's requirements in the future was thus squarely inconsistent with its precedents. FERC is entitled to abandon its precedents and choose a new approach, so long as it "provide[s] reasoned explanation for its action" and acknowledges "that it *is* changing position." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also Wis. Valley Improvement Co. v. FERC*, 236 F.3d 738, 748 (D.C. Cir. 2001) ("[A]n agency acts arbitrarily and capriciously when it abruptly departs from a position it previously held without satisfactorily explaining its reason for doing so."). FERC's order neither recognized nor explained its departure from precedent. That was arbitrary.

Second, FERC observed that the Climate Act "does not yet contain finalized compliance criteria for its zero-emission requirements" and obliquely implied that the PSC might structure its regulations to permit gas-burning plants to remain in operation beyond 2040. Demand Curve Order at P 161. Before this court, FERC further explained that the PSC could interpret the Act's zero-emission target on a net basis—permitting some gas-fired plants to continue operating beyond 2039 and offsetting their emissions through investments in carbon-capture or similar technologies. That argument does not appear in FERC's order. In any event, FERC's order failed to explain why NYISO's contrary reading of the Act—namely, that the PSC will require each power plant in New York to meet the "2040 zero-emission requirement," *id.* at P 151—fell outside the zone of reasonableness. *See City of Bethany*, 727 F.2d at 1136.

Third, gesturing towards the comments submitted by the MMU, FERC claimed that "NYISO's proposed 17-year amortization period fails to consider that the [Climate Act] does not require that power generators retire in order to satisfy the 2040 zero-emission requirement." Demand Curve Order at P 161. But FERC failed to explain why it found the MMU's comments compelling, or why it believed that fossil-fueled plants might continue to operate after 2040. FERC could not simply cite the MMU for its conclusory assertion that "the [Climate Act] does not require that power generators retire." *Id.* It was required to "either critically review the third party's analysis or perform its own. Here, FERC did neither." *In re NTE Conn., LLC*, 26 F.4th 980, 988 (D.C. Cir. 2022) (cleaned up).

\* \* \*

Because FERC's reasons for rejecting NYISO's proposed amortization period were not "reasonable and reasonably explained," we vacate its order and remand for further proceedings consistent with this judgment. *Prometheus Radio*, 141 S. Ct. at 1158. We express no view on whether the more detailed explanations FERC offered in its briefing could support the same result if adopted by the agency and supported by the record.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely

petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/

Daniel J. Reidy
Deputy Clerk