# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――

Argued November 15, 2010      Decided February 8, 2011

No. 09-1296

MARYLAND PUBLIC SERVICE COMMISSION AND NEW JERSEY
BOARD OF PUBLIC UTILITIES,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

AMERICAN MUNICIPAL POWER, INC., ET AL.,
INTERVENORS

―――

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

―――

*Randall L. Speck* argued the cause for petitioners. With him on the briefs was *David L. Cousineau*.

*Robert A. Weishaar Jr.*, *Robert Weinberg*, *Randolph Lee Elliott*, *Susan N. Kelly*, *Paula M. Carmody*, *William F. Fields*, *Charles F. Wheatley Jr.*, *David R. Straus*, and *Stephanie A. Conaghan* were on the brief for intervenors PJM Industrial Customer Coalition, et al. in support of petitioners. *Joshua E. Adrian* entered an appearance.

*Carol J. Banta*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Thomas R. Sheets*, General Counsel, *Robert H. Solomon*, Solicitor, and *Jennifer S. Amerkhail*, Attorney.

*Paul M. Flynn* argued the cause for intervenor PJM Interconnection, L.L.C. in support of respondent. With him on the brief was *Barry S. Spector*.

*John N. Estes III*. argued the cause for intervenors PJM Power Providers Group, et al. in support of respondent. With him on the brief were *John L. Shepherd*, *Ashley C. Parrish*, *David G. Tewksbury*, *Richard Paul Bress*, *Randall Verne Griffin*, *John Longstreth*, *Donald A. Kaplan*, *Kenneth R. Carretta*, *David O. Dardis*, *Cortney Madea*, *A. Karen Hill*, *Stephen L. Huntoon*, *Kirk J. Emge*, and *Michael J. Rustum*. *James C. Beh*, *Shay Dvoretzky*, *Nicholas G. Terris*, and *Paul F. Wight* entered appearances.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion PER CURIAM.

PER CURIAM: Petitioners, the Maryland Public Service Commission and the New Jersey Board of Public Utilities, challenge higher electricity rates that were the result of a new pricing model the Federal Energy Regulatory Commission adopted to encourage increased investment in capacity. We deny the petition for review because the Commission adequately explained why the new rates were just and reasonable.

Respondent-Intervenor PJM Interconnection, LLC, ("PJM") is the regional transmission organization for thirteen

mid-Atlantic states and the District of Columbia. Among its duties, PJM is responsible for preventing interruptions to the delivery of electricity in that region by ensuring that its system has sufficient generating capacity. In August 2005, PJM filed a proposal to replace its old pricing model with what it called the Reliability Pricing Model (RPM), arguing that the old model did not sufficiently encourage investment in electrical capacity. FERC agreed, and adopted the RPM with some modifications. *See PJM Interconnection, L.L.C.*, 115 FERC ¶ 61,079 (2006) (finding preexisting pricing model to be unjust and unreasonable); *PJM Interconnection, L.L.C.*, 117 FERC ¶ 61,331 (2006) (approving, with conditions, the RPM); *PJM Interconnection, L.L.C.*, 119 FERC ¶ 61,318 (2007) (clarifying nature and extent of order approving the RPM). Petitioners argue that the RPM allowed suppliers of electric capacity to exercise their market power to set artificially inflated prices in auctions held before May 2008.

The Commission anticipated concerns about the suppliers' market power and adopted three measures to mitigate this market power. First, the Commission oversees the availability of physical capacity and, as a general matter, requires that suppliers offer all available capacity at RPM auctions. Second, where the Commission determines that a supplier has market power, it requires PJM to substitute a proxy bid, determined by a formula that the RPM provides, in the place of the supplier's actual offer. This pushes high bids down to more competitive levels. And third, what is most relevant to this petition, the RPM encourages the entry of new suppliers into the market with auctions that set rates three years in advance of delivery. For example, the May 2008 auction set the rate for the delivery year beginning in May 2011. This lag time allows competition from new suppliers that lack the capacity to deliver electricity now but could develop that capacity within three years of winning a bid.

4

Of course, the protection of the three-year lag would not be available for the sale of electricity that needed to be delivered before May 2011, and the Commission allowed auctions for those deliveries to proceed under the RPM with a shorter lag. Petitioners claim that this shorter lag time allowed suppliers to exercise market power to artificially inflate prices in those auctions. They fault the Commission for failing to determine whether the challenged rates were just and reasonable, and for relying instead on the conclusion that the provisions of the RPM were followed.[1]

But the Commission did determine that the rates were just and reasonable. It reviewed analytical reports from expert consultants retained by the states, PJM's Market Monitor (who reviewed the auctions and specifically addressed the

---

[1] As a preliminary matter, the Commission contends that under our decision in *Blumenthal v. FERC*, 552 F.3d 875 (D.C. Cir. 2009), it is not enough for a petitioner to show that the challenged rates are not just and reasonable; the petitioner must also propose rates that are. *See id.* at 885. But the language cited by the Commission was unnecessary to our holding and inaccurate insofar as it implied that a challenge to rates must propose alternative rates that are just and reasonable. As the Federal Power Act clearly provides, "[w]henever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate . . . [under its jurisdiction] is unjust, unreasonable, unduly discriminatory or preferential, *the Commission shall determine the just and reasonable rate . . . to be thereafter observed and in force, and shall fix the same by order.*" 16 U.S.C. § 824e(a) (emphasis added); *see also Tenn. Gas Pipeline Co. v. FERC*, 860 F.2d 446, 454 (D.C. Cir. 1988) ("Once [FERC determines a rate is unjust], the *Commission* is required to reach a further determination: the just and reasonable rate to be fixed in place of either an unlawful proposed or existing rate."). It is the Commission's job—not the petitioner's—to find a just and reasonable rate.

issue of market power), and an independent consulting group hired by PJM. Only then did it conclude that there was no reason to believe that market power was being exercised. The Commission found instead that prices went up in some areas because the RPM accounted for transmission constraints that increased the costs of delivering electricity to those areas. The old pricing model, by contrast, had assumed that capacity created anywhere within PJM's territory could readily be transmitted to any other point in that territory, an assumption that created artificially low prices for areas facing transmission constraints. The Commission recognized that the price hikes petitioners challenge would encourage much needed long-term investment in energy capacity. And there is substantial evidence the Commission was right. The PJM's independent report found that the RPM spurred an unprecedented amount of potential new resources—including approximately 33,000 MW of new generation projects—and that reliability had been increased to meet the PJM's target levels.

Given this evidence, we conclude that the Commission had a substantial basis on which to conclude that the RPM was an appropriate tool for increasing reliability in electricity markets, that the RPM did precisely what it was intended to do, even during the transition period before the three-year lag could take effect, and that the price hikes in its wake were attributable to legitimate causes, not the suppliers' exercise of market power. *See, e.g.*, *FPL Energy Maine Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002) (stating that the Commission's factual findings are conclusive if supported by substantial evidence, which "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence"). As we have stated before, "[b]ecause issues of rate design are fairly technical and, insofar as they are not technical, involve policy judgments that lie at the core of the

regulatory mission, our review of whether a particular rate design is just and reasonable is highly deferential." *Pub. Utils. Comm'n v. FERC*, 254 F.3d 250, 254 (D.C. Cir. 2001) (internal quotation marks omitted). Accordingly, we uphold the Commission's orders under the arbitrary and capricious standard. *See, e.g.*, *Sithe/Independence Power Partners v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999).

For the foregoing reasons, the petition for review is

*Denied.*