# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 11, 2013        Decided July 18, 2014

No. 12-1461

FIRSTENERGY SERVICE COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DUKE ENERGY KENTUCKY, INCORPORATED, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*John Lee Shepherd, Jr.* argued the cause for petitioner. With him on the briefs were *John N. Estes III*, *William Rainey Barksdale*, and *John Anthony James Barkmeyer.*

*Holly E. Cafer*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE*, Senior Circuit Judge:* Petitioner FirstEnergy Service Company is a diversified energy company acting on behalf of its affiliates American Transmission Systems, Inc. ("ATSI") and a collection of ATSI Utilities. Like many electric utility companies, FirstEnergy is a voluntary member of a Regional Transmission Organization ("RTO"). In June 2011, FirstEnergy transferred from one RTO to another. In doing so, it incurred costs related to transmission projects both from the organization it left, MISO, and from the one it entered, PJM. FirstEnergy filed a complaint with the Federal Energy Regulatory Commission ("FERC" or "the Commission"), contending that the imposition of costs from both RTOs on ATSI was unjust and unreasonable. The Commission disagreed and dismissed the complaint. FirstEnergy now petitions this court for review of FERC's orders. For the reasons set forth below, we conclude that the Commission did not commit reversible error in its determination and therefore affirm the orders under review.

## BACKGROUND

*Statutory and Regulatory Overview*

Two related but distinct sections of the Federal Power Act ("FPA") govern FERC's adjudication of just and reasonable rates: section 205, codified at 16 U.S.C. § 824(d), and section 206, codified at 16 U.S.C. § 824(e). Section 205

confers upon FERC the duty to ensure that wholesale energy rates and services are just and reasonable. 16 U.S.C. § 824d(a). No public utility under FERC's jurisdiction may "make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage" in establishing rates. *Id.* § 824d(b). Section 205 requires regulated utilities to file with the Commission tariffs outlining their rates for FERC's approval. *Id.* § 824d(c). Section 206 empowers FERC to make a determination on existing rates and to modify them if they are found to be "unjust, unreasonable, unduly discriminatory or preferential." *Id.* § 824e(a). An investigation under section 206 may arise upon complaint or on FERC's own initiative. *Id.*

In its Order No. 2000 rulemaking, *Regional Transmission Orgs.*, Order No. 2000, FERC Stats. & Regs. ¶ 31,089 (1999), *order on reh'g*, Order No. 2000-A, FERC Stats. & Regs. ¶ 31,092 (2000), *appeals dismissed sub nom. Pub. Util. Dist. No. 1 v. FERC*, 272 F.3d 607 (D.C. Cir. 2001) (per curiam), the Commission created RTOs, which operate the transmission grid to provide access for all "at rates established in a single, unbundled, grid-wide tariff." *NRG Power Mktg., LLC v. Me. Pub. Utils. Comm'n*, 558 U.S. 165, 169 n.1 (2010). Generally, these are voluntary associations of transmission facilities that administer energy markets and file tariffs for a group of utilities under section 205. Two such RTOs are the Midwest Independent System Operator, Inc. ("MISO") and PJM Interconnection, L.L.C. ("PJM").

*MISO and PJM*

This case involves FirstEnergy's relationship to both MISO and PJM. For years, FirstEnergy's operations were

split between the two RTOs, requiring FirstEnergy to operate under two sets of rules. In August of 2009, FirstEnergy filed a "Realignment Request" seeking FERC's "approval to realign FirstEnergy's operations within a single RTO: PJM." Realignment Request at 2. The Realignment Request asserted that "[m]oving ATSI into the RTO with which it has stronger electrical ties should reduce congestion and increase efficiency across both RTOs." *Id.* at 3. In June 2011, FirstEnergy transferred from MISO to PJM. Rehearing Order ¶ 4.

In administering their respective markets, RTOs socialize the cost of new transmission projects among RTO members. MISO and PJM allocate such transmission project costs differently. Generally, MISO allocates costs among members at the time specific projects are approved. *See Pub. Serv. Comm'n of Wisconsin v. FERC*, 545 F.3d 1058, 1060–61 (D.C. Cir. 2008) (describing and approving MISO's Tariff Attachment FF, titled "Transmission Expansion Planning Protocol"). "[A] Party that withdraws from [MISO] shall remain responsible for all financial obligations incurred pursuant to this Attachment FF while a Member of [MISO]. . . ." Realignment Request at 39 (citing MISO Tariff, Attach. FF § III.A.2.i).

PJM, in contrast, reallocates transmission project costs on a yearly basis pursuant to Schedule 12 of its tariff. The tariff allocates these costs to each transmission owner based on its share of PJM's total load, and recalculates the allocations on an annual basis. *See* Realignment Order ¶ 98.

> A key feature of PJM's [regional transmission expansion] process, and of cost allocation based upon it, is to annually restudy and consider modifications to

the portfolio of projects in the plan as the needs of the region change. Unlike the one-time allocation of costs of lower voltage projects, providing for an annual reallocation of the costs of high voltage facilities pro rata based on load-ratio share will help ensure that, over time, the costs of these projects are allocated to those who are likely to benefit.

*PJM Interconnection, L.L.C.*, 138 FERC ¶ 61,230 P 62 (2012), *on reh'g*, 142 FERC ¶ 61,216 (2013), *vacated on other grounds*, *Ill. Commerce Comm'n v. FERC*, 2014 WL 2873936 (7th Cir. June 25, 2014). PJM does not allocate regional transmission costs to withdrawing transmission owners. *See Duquesne Light Co.*, 122 FERC ¶ 61,039, *reh'g denied*, 124 FERC ¶ 61,219 P 164 (2008) ("[A] departing transmission owner leaving PJM would, pursuant to [Schedule 12], no longer be subject to these charges; it would not have a zonal annual peak load [with which to calculate its costs] as it would no longer be a zone in PJM.").

Due to these differing methodologies, a transmission owner that withdraws from MISO is still responsible for its share of transmission costs allocated prior to its withdrawal. Conversely, a utility that withdraws from PJM is no longer responsible for costs in ensuing yearly allocations; any costs going forward are redistributed among PJM members at that time, regardless of when the projects were approved. Because FirstEnergy withdrew from MISO and joined PJM, it is responsible for both its prior MISO costs *and* its share of the yearly reallocation for so-called legacy projects in PJM approved before it joined. Realignment Request at 35.

*Proceedings Before the Commission*

In effecting its transfer from MISO to PJM, FirstEnergy submitted filings under both section 205 and section 206. Through these submissions, it sought to secure termination of ATSI's participation in MISO and to garner approval of its integration into PJM.

On August 17, 2009, FirstEnergy (on behalf of ATSI) submitted its Realignment Request under FPA section 205. FirstEnergy requested approval of its withdrawal from MISO and permission to transfer into PJM under the terms set forth in an ATSI-PJM Integration Agreement. Realignment Request at 18, 27–35 & Ex. 1. ATSI reported that, under the Integration Agreement, the ATSI Utilities would "continue to pay for qualifying [MISO] regional facilities planned and approved before June 1, 2011," but would "not pay for PJM legacy . . . projects that were approved by the PJM Board prior to ATSI's entry into PJM." *Id.* at 35. The ATSI Utilities would, "of course, pay for qualifying [PJM] projects planned and approved by the PJM Board after their June 1, 2011 date when their load is integrated into PJM." *Id.* PJM itself "support[ed] FirstEnergy's implementation plan for integrating ATSI into the PJM region" and "believe[d] that FirstEnergy has met the applicable requirements of exiting [MISO] and joining PJM." PJM Comments on Realignment at 2. PJM went on to note that nothing in the language of Schedule 12 contemplates cost allocation when a new member joins PJM. *Id.* at 11–12 (Schedule 12 was "not designed with the scenario in mind of an altogether new Transmission Zone joining PJM.").

Additionally, FirstEnergy sought specific findings from the Commission as to two matters: (1) a waiver of certain

PJM auction procedures with which it would be unable to comply due to timing, Realignment Request at 11–12; *see also* Realignment Order ¶ 59; and (2) an exemption from PJM reallocation costs for projects approved prior to ATSI's integration ("legacy projects"), Realignment Request at 35.

On October 19, 2009, FirstEnergy submitted a section 206 filing ("Complaint") to the Commission. In the Complaint, ATSI through FirstEnergy alleged that if FERC denied its legacy projects exemption request, Schedule 12 of the PJM tariff would be unjust and unreasonable as applied to ATSI. Complaint at 2–3 (noting that the parallel 206 filing was made in response to arguments by "several parties in [the Realignment Proceeding] . . . that the ATSI Utilities had no right to seek this relief absent the filing of a section 206 complaint").

FERC issued two orders responsive to petitioner's filings. Order Addressing RTO Realignment Request and Complaint, 129 FERC ¶ 61,249 (December 17, 2009) ("Realignment Order"); Order Addressing Remaining Requests for Rehearing and Clarification, 140 FERC ¶ 61,226 (September 20, 2012) ("Rehearing Order"). In the Realignment Order, FERC held that ATSI satisfied the requirements to withdraw from MISO, Realignment Order ¶ 48, and accepted the integration plan into PJM, *id.* ¶ 78. The Commission also granted the auction waiver ATSI sought. *Id.*

However, FERC denied the legacy projects exemption. *Id.* ¶ 111. FERC applied the section 206 standard to FirstEnergy's requested exemption, explaining that it "cannot find . . . that allocating a portion of [those] costs to new entrants is unjust and unreasonable, or unduly discriminatory or preferential." *Id.* ¶ 7. The Commission further found that

FirstEnergy was responsible for the costs attributable to its decision to transfer between RTOs. "While we have held that companies are free to join and exit RTOs, we have applied the existing tariffs for each RTO in determining the costs to be allocated to the transmission owners seeking to exit and/or enter." *Id.* ¶ 113. It is up to FirstEnergy to "determine whether such a move is cost-justified." *Id.*

FirstEnergy timely filed two requests for rehearing on January 15, 2010 and January 19, 2010. FirstEnergy raised two principal arguments: First, it contended that FERC had unlawfully and irrationally dismissed its complaint under section 206 on the ground that the challenged tariff provision had previously been found reasonable when initially filed under FPA section 205. Second, it contended that FERC's ruling violated cost causation principles and resulted in reallocating sunk costs. Rehearing Request at 3–4, 6, 16–18.

Thirty-two months later, on September 20, 2012, FERC issued its order denying rehearing on the legacy projects issue. Rehearing Order ¶ 21. "Specifically, we cannot find on this record that PJM's tariff is unjust and unreasonable in allocating to a new member, such as ATSI, a share of the costs of regional transmission expansion projects . . . that were planned prior to the new member's integration into PJM." *Id.* The Commission also rejected FirstEnergy's arguments on cost causation and sunk costs, noting for the first time that "[c]ost causation also includes the allocation of 'costs to serve' that party including those facilities that benefit the party." *Id.* ¶ 26. Finally, FERC found that the costs FirstEnergy incurred in its transfer were not duplicative: the costs associated with MISO are a contract exit fee not based on a finding of benefits, while PJM's costs are related to the benefit flowing to FirstEnergy. *Id.* ¶ 34. Fundamentally, the

Commission was "not persuaded that . . . PJM's tariff is unjust and unreasonable. RTO participation is voluntary, as the Commission has made clear on numerous occasions. ATSI, in considering the merits of its membership in PJM, elected to proceed and, thus, cannot now claim that PJM's [transmission project] cost allocation methodology created a barrier to entry." *Id.* ¶ 31.

*Petition for Review*

Petitioner seeks review of both orders before this Court. FirstEnergy contends generally that FERC erred in its treatment of the complaint and arbitrarily and capriciously required ATSI to pay for PJM's legacy transmission costs. According to FirstEnergy, such a requirement is "contrary to cost causation principles and FERC's well-established policy against reallocating sunk costs." Pet. Br. at 3. Moreover, petitioner argues, FERC's blanket adherence to PJM's tariff is an arbitrary and capricious failure to meaningfully consider the merits of its section 206 filing.

We disagree, and deny FirstEnergy's petition for review. For the reasons discussed below, we hold that the Commission correctly determined that FirstEnergy had not carried its burden under FPA section 206 of demonstrating that Schedule 12 of PJM's tariff was unjust and unreasonable as applied to ATSI.

## STANDARD OF REVIEW

We review final orders of the Commission under the arbitrary and capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). An agency action will be upheld if the agency "articulate[d] a satisfactory

explanation for its action including a 'rational connection between the facts found and the choice made.' " *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The Commission's factual findings will be upheld if supported by substantial evidence. 16 U.S.C. § 825*l*(b).

## DISCUSSION

We begin by addressing petitioner's concern that "the orders on review effectively deny a utility's right to file a complaint under FPA section 206 to request modification of an RTO tariff when joining an RTO." Pet. Br. at 22. The Commission did in this case dismiss petitioner's complaint. Realignment Order ¶ 111. Petitioner contends that the Commission's dismissal was a wholesale discarding of FirstEnergy's filing which operates as a violation of rights guaranteed to petitioner under *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1 (D.C. Cir. 2002). Pet. Br. at 22. Specifically, FERC's orders purportedly run afoul of *Atlantic City*, where we held that FERC may not lawfully compel a public utility that joins an RTO to surrender its statutory right to exit the organization under section 205. *See* 295 F.3d at 9–10. We disagree. FERC did not preclude petitioner from asserting its Complaint, or exercising any statutory right. It did not indulge in the sort of wholesale dismissal of petitioner's arguments that petitioner posits. Instead, FERC addressed petitioner's Complaint on the merits. Rehearing Order ¶¶ 21, 29, 32; *see* Realignment Order ¶ 112 ("ATSI's voluntary choice to move from one RTO to another does not cause either of [the transmission cost allocation] methodologies to no longer be just and reasonable or not unduly discriminatory simply because each produces a

different result."). The linguistic choice by FERC to state that it was "dismiss[ing]" FirstEnergy's Complaint rather than "denying" it does not convert that which is substantively sufficient into redressible error. Realignment Order ¶ 111.

"The deeper problem with FERC's holding," petitioner tells us, "is that it is unlawful and irrational to dismiss *any* complaint under FPA section 206 on the ground that the challenged tariff provision was previously found reasonable when initially filed under FPA section 205." Pet. Br. at 24. Perhaps that is true as an abstract statement of law. However, we cannot agree that FERC's review was so hollow. The treatment given the provision under review was meaningful, as discussed below, and not the recitation petitioner describes.

*"Just and Reasonable" Determination*

"Generally speaking, section 205 covers rate filings by jurisdictional public utilities [and] invokes just and reasonable standards for filed rates . . . ." *Ala. Power Co. v. FERC*, 993 F.2d 1557, 1571 (D.C. Cir. 1993). "Section 206 empowers the Commission, on its own motion or upon complaint, to investigate rates and to determine the lawfulness of such rates." *Id.* The statutory "just and reasonable" standard is the same under section 205 and section 206. *See, e.g.*, *Bos. Edison Co. v. FERC*, 233 F.3d 60, 64 (1st Cir. 2000) ("[T]he utility sets the rates in the first instance, subject to a basic statutory obligation that rates be just and reasonable and not unduly discriminatory or preferential. FERC . . . can investigate a newly filed rate (section 205), or an existing rate (section 206), and, if the rate is inconsistent with the statutory standard, order a change in the rate to make it conform to that standard." (internal citations omitted)); *Kan. Gas & Elec. Co. v. FERC*, 758 F.2d 713, 716 (D.C. Cir. 1985) ("FERC

evaluated the proposed rates under Sections 205 and 206 of the Federal Power Act, both of which require the Commission to determine that the rates are just and reasonable." (internal quotation marks and citation omitted)).

"Because [petitioner] is challenging . . . existing rates, its claim must be brought pursuant to § 206, rather than § 205, of the FPA." *Sithe/Independence Power Partners, L.P. v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999). Section 206(a) provides that "[w]henever the Commission, after a hearing held upon its own motion or upon complaint, shall find that any rate . . . is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate . . . ." 16 U.S.C. § 824e(a). Under section 206, "the burden of proof to show that any rate, charge, classification, rule, regulation, practice, or contract is unjust, unreasonable, unduly discriminatory, or preferential shall be upon . . . the complainant." *Id.* § 824e(b).

Thus, we consider this complaint on a typical section 206 standard. Here, FirstEnergy bears the burden of demonstrating that, as applied to ATSI, Schedule 12 of PJM's tariff is unjust and unreasonable. FERC argues on brief that a section 206 filing carries with it a dual burden: petitioner "first must show that the existing rate or practice is unjust, unreasonable, unduly discriminatory or preferential, and then must demonstrate that its own proposal is a just and reasonable replacement." Br. for FERC at 4 (citing *Blumenthal v. FERC*, 552 F.3d 875, 881 (D.C. Cir. 2009)).

To begin our analysis, we note that FERC does hold petitioner—and indeed any filer under section 206 save the Commission itself—to too high a standard. The "just and reasonable" lodestar is no loftier under section 206 than under

section 205, and it is only FERC who is required to shoulder the "dual burden" when it institutes a section 206 proceeding. *See, e.g.*, *Ala. Power Co.*, 993 F.2d at 1571 ("While the proponent of a rate change under § 206, here FERC, has the burden of proving that the existing rate is unlawful . . . the party filing a rate adjustment with the Commission under § 205 bears the burden of proving the adjustment is lawful." (internal citations omitted)).    As petitioner correctly notes, we rejected the above "dual burden" reasoning in *Blumenthal* as "unnecessary to our holding and inaccurate insofar as it implied that a challenge to rates must propose alternative rates that are just and reasonable." *Md. Pub. Serv. Comm'n v. FERC*, 632 F.3d 1283, 1285 n.1 (D.C. Cir. 2011).  It is "the Commission's job—not the petitioner's—to find a just and reasonable rate." *Id.*

However, clarification of this standard here is cold comfort to petitioner.  Regardless of whether it is charged with completing step two, proposing new just and reasonable rates, it still must complete step one, demonstrating that PJM's existing rates are unjust and unreasonable.  Our question then is whether petitioner met its burden as to the existing rates, and we agree with the Commission that it did not.  We hold that FERC did not err in rejecting each of petitioner's arguments as failing to demonstrate that PJM's Schedule 12 was unjust and unreasonable as applied to ATSI.

*Cost Causation and Sunk Cost Allocation*

FirstEnergy first argues that the Commission's failure to meaningfully engage on the cost concerns attendant PJM's tariff renders the orders before us arbitrary and capricious. We cannot agree with this characterization of the orders on review.  FERC considered each of the arguments raised by

petitioner and appropriately concluded that they did not render application of Schedule 12 unjust and unreasonable. That the Commission did not agree with petitioner's assessment of the effects Schedule 12 would have on FirstEnergy does not render its determination arbitrary and capricious.

FirstEnergy alleged that it cannot be just and reasonable to require it to pay both MISO's system-wide costs as an exit fee and PJM's system-wide costs as a condition of its entry to PJM. Complaint at 8. However, the Commission reasonably found that the payment structures for MISO and PJM are wholly distinct from each other and undertaken for separate purposes. Rehearing Order ¶¶ 33–34. As a result, "ATSI's voluntary choice to move from one RTO to another does not render [either methodology] unjust or unreasonable . . . simply because each methodology produces a different result." *Id.* ¶ 33. We are satisfied that this is a reasonable basis on which to reject the section 206 complaint.

The Commission went on to point out that "ATSI and the PJM transmission owners are free to negotiate the terms of ATSI's entrance into PJM" and that PJM would "have both a will and an incentive to facilitate ATSI's realignment on a mutually beneficial basis." Realignment Order ¶ 114. This strategy may have been especially effective given that PJM agrees that Schedule 12 did not contemplate integration of new transmission owners or allocating legacy costs to them. *Id.* ¶ 113 n.75; PJM Comments on Realignment Request at 11–12. Petitioner incorrectly characterizes this finding as "[breaking] new ground by holding that a complaint could be rejected because FERC prefers that the parties file a negotiated proposal under FPA section 205." Pet. Br. at 30. One does not follow from the other—FERC rejected the

complaint because it found that the rates as applied were not unjust and unreasonable; that it suggested an alternative via negotiation does not change this determination. In any event, petitioner did have the opportunity to negotiate with PJM in the eighteen months between the Realignment Order and FirstEnergy's integration into the RTO and could have at that point submitted a section 205 filing with new terms alongside PJM. Such an approach would have allowed FirstEnergy to avoid its burden as to the existing tariff. *See* 16 U.S.C. § 824d. Instead, it made the choice to join PJM without such a negotiated agreement, and is unable to demonstrate the requisite "unjust and unreasonable" showing that it must establish under section 206.

In addition to its argument on duplicative costs, petitioner also contends that Schedule 12 presents inescapable fallacies concerning cost causation and reallocation of sunk costs. However, in principle, a "beneficiary pays" approach is a just and reasonable basis for allocating the costs of regional transmission projects, even if it leads to reallocating sunk costs. As the Commission found, cost causation "includes the allocation of 'costs to serve' that party including those facilities that benefit the party." Rehearing Order ¶ 26. "Even if a new member was not using the system when a particular project was planned or authorized, the new member may nevertheless use and benefit from the new facility in the future." *Id.* PJM's comments that Schedule 12 was not implemented with new RTO members in mind are immaterial. Because FirstEnergy will use and benefit from the new facilities, *id*. ¶ 26 & n.27, we defer to FERC's conclusion that the costs FirstEnergy will incur are not unjust and unreasonable under a "costs to serve" approach.

FirstEnergy goes on to complain that the transmission costs here are also "sunk" in that investment decisions about these facilities were made before petitioner sought to join PJM. Pet. Br. at 51–54. Petitioner notes that FERC has in other cases shied away from redistributing costs that have already been incurred, or are sunk. *See PJM Interconnection, L.L.C.*, Opinion No. 494, 119 FERC ¶ 61,063 at P 53 (2007), *reh'g denied*, Opinion No. 494-A, 122 FERC ¶ 61,082 (2008), *reh'g denied*, 124 FERC ¶ 61,033 (2008), *reh'g and clarification denied*, 127 FERC ¶ 61,092 (2009), *aff'd in relevant part*, *Ill. Commerce Comm'n*, 576 F.3d 470, 474 (7th Cir. 2009). However, the Commission's prior decisions concerning sunk costs are inapplicable where they involved facilities "built solely for the benefit of the individual transmission owner's systems." Rehearing Order ¶ 30. By contrast, PJM's "project costs that will be allocated to the ATSI zone were developed as part of PJM's regional planning process and are designed to benefit the entire PJM footprint over the entirety of their useful life." *Id.* Further, the transmission planning process in PJM accommodates updates: it will take into account the addition of FirstEnergy to the regional grid, which can result in changes to planned projects. *Id.* ¶ 29. As a result, we agree with the Commission that the rates at issue here are not unjust and unreasonable as a reallocation of sunk costs.

It is worth noting that FERC did not address these issues until rehearing. Rehearing Order ¶ 26. Further, we are sympathetic to FirstEnergy in its reliance on the Seventh Circuit's rejection of the same Schedule 12 in *Illinois Commerce Commission v. FERC*, 576 F.3d 470, 476 (7th Cir. 2009). Petitioner explains its rationale as: "[i]n [*Illinois Commerce Commission*], the Seventh Circuit found that FERC failed to support its cost causation theory with respect

to *existing* members of PJM; it follows *a fortiori* that FERC cannot rely on the same cost causation theory to socialize legacy project costs to *new* members of PJM who had no say in the decision to build them." Pet. Br. at 48. However, the Seventh Circuit rejected Schedule 12 on a finding that FERC had not demonstrated that the benefits from transmission projects were "at least roughly commensurate with . . . utilities' share of total electricity sales." *Ill. Commerce Comm'n*, 576 F.3d at 477. Although FirstEnergy might have argued before us that the costs and benefits of PJM's regional projects are not commensurate for ATSI, it did not do so and thus we do not reach that issue.[1]

"[A]ll approved rates [must] reflect to some degree the costs actually caused by the customer who must pay them." *Id.* at 476 (alteration in original) (internal citation and quotation marks omitted). FERC found that petitioner's customers would use and benefit from the new facilities, Rehearing Order ¶¶ 26, 34, and noted that facilities may provide benefits over their lifetime, including benefits to petitioner, *id.* ¶ 30. We defer to the Commission's reasoned finding.

*Waiver or Modification of Tariff Provisions*

Finally, FirstEnergy broadly argues that FERC's orders regarding the section 206 complaint are based almost entirely on the tariffs already in place in both RTOs. It reasoned that

---

[1] The Seventh Circuit recently had occasion to reconsider Schedule 12 in *Illinois Commerce Comm'n v. FERC*, 2014 WL 2873936, __ F.3d __ (7th Cir. June 25, 2014). That decision reinforced the earlier determination in *Illinois Commerce Commission* that FERC failed to demonstrate commensurate benefits, and thus does not influence our conclusion here.

it had already found those rates just and reasonable and thus FirstEnergy can make no argument to the contrary. However, FERC is required to evaluate a 206 complaint as to existing rates specifically because they might have *become* unjust and unreasonable by intervening shifts in circumstances—*e.g.*, ATSI's leaving MISO and joining PJM. Pet. Br. at 25 (citing *La. Pub. Serv. Comm'n v. FERC*, 482 F.3d 510, 519–20 (D.C. Cir. 2007)). It is not enough, FirstEnergy states, to repeat that "the plain language of the tariff governs," and doing no more than that is an arbitrary and capricious failure to meaningfully respond to petitioner's statutory challenge. Pet. Br. at 23–24.

But FERC did not simply repeat that the plain language of the tariff governs. The Commission reasoned that "[e]ach of the PJM and [MISO] cost allocation methodologies has been accepted by the Commission as just and reasonable," and that "ATSI's voluntary choice to move from one RTO to another does not cause either of [those] methodologies to no longer be just and reasonable." Realignment Order ¶ 112. This statement is the upshot of FirstEnergy's failure to carry its burden, and FERC lawfully declined to waive the legacy projects costs or modify the tariff so FirstEnergy could avoid them.

Petitioner argues that the legacy projects costs it seeks to avoid are no different than the auction procedures FERC waived; both were findings petitioner requested of FERC in order to facilitate the transition into PJM, yet the Commission treated the requests differently. However, the Commission articulated a reasoned distinction between the auction waiver and the legacy projects exemption—that the former is to provide an alternative means of tariff compliance, while the latter is wholesale removal of a tariff requirement. Rehearing Order ¶ 40. FirstEnergy did not show that it could not comply

with the tariff requirement regarding legacy projects costs, nor did its requested exemption from those costs seek an alternative means of compliance. Rather, as the Commission found, the requested exemption sought to "remove a tariff requirement entirely." *Id.* For that reason, FERC reasonably distinguished between FirstEnergy's requested findings here and found "no inconsistency in accepting the [auction procedure] waiver, while rejecting the request for an exemption from [legacy projects costs]." *Id.* Nor do we.

Finally, says petitioner, illustrative of the Commission's caprice is its theory that the tariff here could not be modified while other tariffs could. Pet. Br. at 41–42 (arguing that the Commission modified the tariff in the MidAmerican proceedings); *id.* at 42–44 (same regarding Entergy). However, the Commission reasonably found that circumstances required for modification of a tariff were not present in ATSI's case. Most importantly, as discussed above, the Commission did not find the existing tariff to be unjust and unreasonable as applied to ATSI, as required under the FPA. This was not a case where an RTO itself submitted a 205 filing to change its own tariff, obviating the need for an "unjust and unreasonable" showing. Finally, the parties did not negotiate a settlement. Absent such circumstances, there was no authority for FERC to modify the tariff and the plain language of the tariff does indeed govern. *See* Realignment Order ¶ 113 n.75.

## CONCLUSION

Because FirstEnergy failed to carry its burden under section 206 that Schedule 12 of PJM's tariff was unjust and unreasonable as applied to ATSI, we deny the petition for review.