# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 20-1289

September Term, 2021

FILED ON: DECEMBER 28, 2021

TRANSCANADA POWER MARKETING LTD.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NEW ENGLAND POWER GENERATORS ASSOCIATION, INC.,
INTERVENOR

Consolidated with 20-1366

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

## **J U D G M E N T**

This cause was considered on the briefs and appendix filed by the parties and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the petitions for review are hereby denied.

In 2015, the court remanded this case to the Federal Energy Regulatory Commission ("Commission" or "FERC") with directions to better explain why the rates associated with a temporary program designed to ensure that the New England power system could reliably meet consumer demand for electricity during the winter of 2013-2014 were "just and reasonable" within the meaning of the Federal Power Act. *TransCanada Power Mktg. Ltd. v. FERC*, 811 F.3d 1 (D.C. Cir. 2015) ("*TransCanada I*"). TransCanada Power Marketing Ltd. ("TransCanada") now petitions for review of FERC's determination on remand that the disputed rates were just and reasonable. TransCanada argues that, in reaching its judgment, the Commission erred in (1) using a market-based paradigm to evaluate auction results and (2) relying on a cost-based supply curve

with a 25% upward adjustment. TransCanada also advances several additional arguments, including that the record before the Commission was deficient. We find no merit in TransCanada's claims.

First, the disputed program employed a bid auction, which is a market mechanism. Therefore, the Commission reasonably chose to analyze the rates associated with the temporary program under a market-based paradigm. Second, the supply curve and 25% adder reflected reasonable estimates of participant costs and reasonably accounted for indeterminate factors such as participants' lack of information and the unique nature of the program. Finally, TransCanada forfeited the remaining arguments it now advances by failing to adequately raise them before the Commission. We therefore deny the petitions for review.

**Background**

"In June 2013, pursuant to section 205(d) of the Federal Power Act ('FPA'), 16 U.S.C. § 824d(d) (2012), the Independent System Operator for New England ('ISO New England') filed a tariff revision with [FERC]. The tariff filing reflected ISO New England's concern over the region's growing reliance on natural gas-fired generators, which can be vulnerable to supply shortages and price volatility." *TransCanada I*, 811 F.3d at 2 (quotation marks and citation omitted). ISO New England "proposed [a] Winter Reliability Program [('Program')] [that] included an Oil Inventory Service component, which would compensate oil-fired and dual-fuel generators, selected through a [bid auction], to maintain specified supplies of oil and to provide energy when system conditions were stressed" during the winter of 2013-2014. *Id.* (first and third alterations in original) (citation omitted). ISO New England designed the Program as "a time-limited, discrete, out-of-market solution" and planned to select participants based on price and reliability characteristics. *Id.* at 4-5. Successful bidders would receive their "as-bid" price. *Id.* at 5.

ISO New England conducted a bid auction and filed the results with the Commission. *Id.* at 6. The Commission accepted the Program and the bid results in October 2013, and TransCanada subsequently petitioned this court for review. *Id.* at 6-8. Before this court, TransCanada argued, among other things, that "the record upon which FERC relied [wa]s devoid of any evidence regarding how much of the Program cost was attributable to profit and risk mark-up," which meant "FERC could not properly assess whether the Program's rates were just and reasonable," *id.* at 3, as required by the FPA, *see* 16 U.S.C. § 824d(a). This court agreed, granting in part the petition for review and remanding for the Commission to "either offer a reasoned justification for the Order or revise its disposition to ensure that the rates under the Program [we]re just and reasonable." *Id.* at 3-4. We indicated that FERC could "rely on competitive market forces to ensure that profits [we]re not excessively high" as long as it explained "why it believed that the Program was competitive" and discussed "the economic forces that it believed restrained the suppliers in their confidential bid offers." *Id.* at 13.

On remand, FERC analyzed the bid auction results under a market-based paradigm and again found them just and reasonable. *See ISO New England Inc.*, 171 FERC ¶ 61,003 (2020), *reprinted in* Joint Appendix ("J.A.") 162-210. In its review, the Commission credited ISO New

England's analysis, which relied on a supply curve based on estimated participant costs and adjusted the expected price upward by 25% to account for participants' limited information about the novel program. The Commission concluded that even if auction participants possessed market power, the Program's design features adequately mitigated the *exercise* of any such power.

TransCanada requested rehearing. The Commission granted rehearing for the limited purpose of further consideration, *see ISO New England Inc.*, Order (June 1, 2020), *reprinted in* J.A. 538, and subsequently modified the discussion, but not the result, of its order finding the results just and reasonable, *see ISO New England Inc.*, 172 FERC ¶ 61,164 (2020), *reprinted in* J.A. 539-56. TransCanada timely petitioned for review.

**Standard of Review**

"We review final orders of the Commission under the arbitrary and capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). An agency action will be upheld if the agency articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made. The Commission's factual findings will be upheld if supported by substantial evidence." *TransCanada I*, 811 F.3d at 8 (alteration in original) (citations omitted) (quoting *FirstEnergy Serv. Co. v. FERC*, 758 F.3d 346, 352 (D.C. Cir. 2014)). "The statutory requirement that rates be 'just and reasonable' is obviously incapable of precise judicial definition, and we afford great deference to the Commission in its rate decisions." *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 532 (2008) (citations omitted).

**Analysis**

*1. Market-Based Paradigm*

When FERC evaluates whether rates are "just and reasonable," it "must choose a method that entails an appropriate balancing of the investor and the consumer interests." *Morgan Stanley*, 554 U.S. at 532 (internal quotation omitted). While FERC traditionally reviewed rates under a cost-based method, it has broad discretion to choose another method, including a market-based approach. *Id.* TransCanada first argues that FERC should not have applied a market-based paradigm to analyze the auction results because the Program did not satisfy the requirements of the Commission's market-based-rate program. Under ISO New England's market-based-rate program, "ISO [New England] determines the amount of electricity needed to meet demand for a particular time period and sets the 'market-clearing price' at which there is no excess demand." *Blumenthal v. FERC*, 552 F.3d 875, 878 (D.C. Cir. 2009). All participants then pay the market-clearing price. *See id.*; *see also Morgan Stanley*, 554 U.S. at 537 (explaining that, "instead of setting forth rate schedules or rate-fixing contracts," market-based tariffs "simply state that the seller will enter into freely negotiated contracts with purchasers" (citation omitted)). The Commission will approve a tariff for such a program only if a participant demonstrates, among other things, that it lacks or has sufficiently mitigated market power. *See Morgan Stanley*, 554 U.S. at 537-38. Here, FERC does not dispute that the Program fails to adhere to Commission requirements for its market-based-rate program. Instead, FERC maintains that it reasonably

"employed a market-based paradigm to review the rates resulting from a program that utilized market principles – i.e., an auction to obtain bids from sellers competing against one another to provide winter reliability service." Br. of Resp't 34. We can find no grounds to overturn FERC's use of this market-based paradigm to address the winter reliability service issues that it faced.

TransCanada nonetheless persists in its claim that because the Program did not comport with the requirements for ISO New England's market-based-rate program, the Commission should have analyzed the Program as a cost-based program. Under a cost-based method, a generator recovers its costs plus a rate of return. *See Morgan Stanley*, 554 U.S. at 532. We disagree that the Commission is so constrained. Indeed, "[t]he Supreme Court has repeatedly rejected the argument that there is only one just and reasonable rate possible . . . and that this rate must be based entirely on some concept of cost plus a reasonable rate of return." *Blumenthal*, 552 F.3d at 883 (omission in original) (internal quotation omitted) (collecting cases). Provided its method is reasoned, FERC "may determine rates via a variety of formulae," and its "methodologies may vary depending upon the circumstances of each case." *TransCanada I*, 811 F.3d at 12. Here, FERC selected an appropriate methodology under the circumstances, and it adequately explained its analysis.

In this case, FERC addressed a unique problem and approved a temporary program that was designed to ensure that the New England power system could reliably meet consumer demand for electricity during the winter of 2013-2014. In addressing the issue, the Commission reasonably concluded that even if Program participants possessed market power, Program design features adequately mitigated the exercise of any such power. Those design features included "ISO [New England's] discretion to adjust the procurement level, participants' uncertainty about the costs and bidding strategy of their competitors, and ISO [New England's] uncertain price-sensitivity when valuing the non-cost reliability factors provided by different resources." *ISO New England Inc.*, 171 FERC ¶ 61,003 at P 96, J.A. 208.

*2. Supply Curve and 25% Adder*

TransCanada also challenges the Commission's reliance on ISO New England's supply curve and 25% adder as unreasonable and unsupported by substantial evidence. We reject this challenge.

To evaluate whether the bid results reflected anticompetitive behavior, the Commission reasonably credited ISO New England's analysis, which used the supply curve to estimate the auction's expected marginal bid. This analysis identified a cut-off price reflecting some exercise of participants' market power. ISO New England, the Commission, and ISO New England's neutral compliance department all agreed that, to account for the multiple uncertainties the novel Program presented, the expected marginal bid should be adjusted upward. FERC reasonably adopted 25% as the appropriate level for this upward adjustment, noting that, "when evaluating for the exercise of market power in other ISO [New England] products and services, ISO [New England]'s Tariff also includes adders (some of which are greater than 25%) that are applied to what are considered reasonable estimates for competitive offers." *ISO New England Inc.*, 172 FERC ¶ 61,164 at P 33, J.A. 553.

"Congress has entrusted the regulation of the electricity industry to FERC, not to the courts." *Blumenthal*, 552 F.3d at 884. "[T]he breadth and complexity of the Commission's responsibilities demand that it be given every reasonable opportunity to formulate methods of regulation appropriate for the solution of its intensely practical difficulties." *Id.* at 881 (alteration in original) (quoting *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 790 (1968)). This court's "important but limited role is to ensure that the Commission engaged in reasoned decisionmaking—that it weighed competing views, selected a compensation formula with adequate support in the record, and intelligibly explained the reasons for making that choice." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 295 (2016). The Commission did so here.

### 3. Remaining Arguments

TransCanada raises several additional arguments, including that the Commission failed to collect information as required by the court in *TransCanada I*, did not adequately analyze information from sellers, and failed to allow TransCanada to review certain data.

We lack jurisdiction to entertain these arguments because TransCanada did not raise them in its request for rehearing before the Commission. "Under 16 U.S.C. § 825*l*(b), parties seeking judicial review of the Commission's orders under the [FPA] must 'first petition for rehearing of those orders and must themselves raise in that petition all of the objections urged on appeal,' unless they can show 'reasonable grounds' for their failure to do so. Whether petitioners have complied with this 'unusually strict [exhaustion] requirement' hinges on whether their request for rehearing 'alerted the Commission to the legal arguments' they now raise on judicial review." *Ameren Servs. Co. v. FERC*, 893 F.3d 786, 793 (D.C. Cir. 2018) (second alteration in original) (first quoting *Wabash Valley Power Ass'n v. FERC*, 268 F.3d 1105, 1114 (D.C. Cir. 2001); and then quoting *Save Our Sebasticook v. FERC*, 431 F.3d 379, 381 (D.C. Cir. 2005)). TransCanada neither alerted the Commission to these objections nor offered reasonable grounds for failing to do so. Accordingly, we do not reach those arguments here.

For the foregoing reasons, we deny the petitions for review.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk