**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, EX REL. KAMALA D. HARRIS, ATTORNEY GENERAL; PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA; SOUTHERN CALIFORNIA EDISON CO., *Petitioners*, | No. 13-71276 FERC No. EL01-10-076 |

v.

FEDERAL ENERGY REGULATORY
COMMISSION,
                              *Respondent*,

CARGILL POWER MARKETS, LLC; EL
PASO MARKETING COMPANY, LLC;
EXELON GENERATION COMPANY,
LLC; IDACORP ENERGY SERVICES
COMPANY; IDAHO POWER
COMPANY; TALEN MONTANA, LLC;
TALEN ENERGY MARKETING, LLC;
PUBLIC SERVICE COMPANY OF
COLORADO; SHELL ENERGY NORTH
AMERICA (US), L.P.; TRANSCANADA
ENERGY LTD.,
                    *Respondents-Intervenors*.

| | |
|---|---|
| THE CITY OF SEATTLE, WASHINGTON, | No. 13-71487 |
| *Petitioner*, | FERC No. EL01-10-076 |
| PORTLAND GENERAL ELECTRIC COMPANY; DYNEGY POWER MARKETING; MPS MERCHANT SERVICES, INC; MPS CANADA CORP., | OPINION |
| *Intervenors*, | |
| v. | |
| FEDERAL ENERGY REGULATORY COMMISSION, | |
| *Respondent*, | |
| TALEN MONTANA, LLC; TALEN ENERGY MARKETING, LLC; TRANSALTA ENERGY MARKETING (US), INC.; TRANSALTA ENERGY MARKETING (CALIFORNIA), INC.; EL PASO MARKETING COMPANY, LLC, | |
| *Respondents-Intervenors*. | |

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and Submitted
June 16, 2015—San Francisco, California

Filed December 17, 2015

Before: Sidney R. Thomas, Chief Judge, and M. Margaret McKeown and Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Federal Energy Regulatory Commission

The panel denied a petition for review from a decision of the Federal Energy Regulatory Commission ("FERC") with respect to petitioners' claim that the *Mobile-Sierra* presumption, which requires FERC to presume that the rate set in a freely negotiated wholesale-energy contract was just and reasonable, cannot apply to the spot sales at issue; and dismissed evidentiary challenges for lack of jurisdiction.

The panel held that there was jurisdiction to review FERC's decision to employ the *Mobile-Sierra* presumption in the class of contracts at issue because, pursuant to the inquiry in *Steamboaters v. FERC*, 759 F.2d 1382 (9th Cir. 1985), the test for final action under the Federal Power Act was met. The panel held that it lacked jurisdiction to consider the individual evidentiary restrictions raised in these cases because they were interim rulings whose consequences could not be determined with any finality at this juncture.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that FERC reasonably applied the *Mobile-Sierra* presumption to the class of contracts at issue in these cases.

---

**COUNSEL**

Kevin J. McKeon (argued), Judith D. Cassel, Whitney E. Snyder, Hawke McKeon & Sniscak LLP, Harrisburg, Pennsylvania; Kamala D. Harris, Attorney General of California, Mark Breckler, Chief Assistant Attorney General, Martin Goyette, Senior Assistant Attorney General, San Francisco, California; David M. Gustafson, Deputy Attorney General, Oakland, California, for Petitioner People of the State of California *ex rel.* Kamala D. Harris, Attorney General.

Candace J. Morey, Sarah R. Thomas, Public Utilities Commission of the State of California, San Francisco, California; Paul B. Mohler, Law Offices of Paul B. Mohler, PLC, Washington, D.C., for Petitioner Public Utilities Commission of the State of California.

Rex S. Heinke (argued), Akin Gump Strauss Hauer & Feld LLP, Los Angeles, California; Jerry E. Rothrock, Moyers Martin, LLP, Tulsa, Oklahoma; Gregory C. Narver, Seattle City Attorney's Office, Seattle, Washington, for Petitioner City of Seattle.

David L. Morenoff, General Counsel, Robert H. Solomon, Solicitor, Lona T. Perry (argued), Deputy Solicitor, Susanna Y. Chu, Attorney, Washington, D.C., for Respondent Federal Energy Regulatory Commission.

Lawrence G. Acker, Van Ness Feldman, LLP, Washington, D.C.; Rex Blackburn, Brian R. Buckham, Idaho Power Company, Boise, Idaho, for Respondents-Intervenors Idaho Power Company and IDACORP Energy Services Co.

Floyd L. Norton, IV, Morgan, Lewis & Bockius LLP, Washington, DC, for Respondents-Intervenors Cargill Power Markets, LLC and Public Service Company of Colorado.

Andrea J. Chambers, Katharine E. Leesman, Ballard Spahr LLP, Washington, D.C., for Respondent-Intervenor Exelon Generation Company, LLC.

Joseph B. Williams, Matthew D. Spohn, Ryan C. Norfolk, Norton Rose Fulbright US LLP, Washington, D.C., for Respondent-Intervenor El Paso Marketing Company, LLC.

Jeffrey D. Watkiss, McDermott Will & Emery, LLP, Washington, D.C., for Respondent-Intervenor Shell Energy North America (US), L.P.

Damien R. Lyster, Vinson & Elkins LLP, Washington, D.C., for Respondents-Intervenors TansAlta Energy Marketing (U.S.) Inc. and TransAlta Energy Marketing (California) Inc.

Kenneth L. Wiseman (argued), Mark F. Sundback, Andrews Kurth, LLP, Washington, D.C., for Rrespondent-Intervenor TransCanada Energy Ltd.

## OPINION

McKEOWN, Circuit Judge:

These appeals are the latest in a series of petitions that stem from the energy crisis in California and other western states in 2000 and 2001. The key issue we consider is the applicability of the *Mobile-Sierra* doctrine, which requires the Federal Energy Regulatory Commission ("FERC") to "presume that the rate set out in a freely negotiated wholesale-energy contract meets the 'just and reasonable' requirement" imposed by law. *Morgan Stanley Capital Grp., Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 530 (2008).

## BACKGROUND

The circumstances of the California energy crisis are detailed in numerous cases.[1] We recount only the history that is relevant to these petitions.

After the California legislature deregulated the electricity market in the mid-1990s, "wholesale electricity prices skyrocketed." *Port of Seattle v. FERC*, 499 F.3d 1016, 1022 (9th Cir. 2007). Average rates soared in the California and Pacific Northwest short-term supply markets (also known as "spot markets"). *Id.* at 1022–23. The spot markets in this case were somewhat unique in the particular way that rates were set:

---

[1] *See, e.g.*, *Port of Seattle v. FERC*, 499 F.3d 1016, 1022–26 (9th Cir. 2007); *Pub. Utils. Comm'n of State of Cal. v. FERC*, 462 F.3d 1027, 1036–44 (9th Cir. 2006) ("*Pub. Utils. Comm'n*"); *Bonneville Power Admin. v. FERC*, 422 F.3d 908, 910–14 (9th Cir. 2005); *Cal. ex rel. Lockyer v. FERC*, 383 F.3d 1006, 1008–11 (9th Cir. 2004) ("*Lockyer*").

> Unlike the California spot market, which operated through a centralized power exchange using a central clearing price, the Pacific Northwest spot market operated through bilateral contracts negotiated independently between buyers and sellers, without a central clearing price. Most of these contracts were entered into under the terms of the Western Systems Power Pool ("WSPP") Agreement, a standard form contract for electricity sales.

*Id.* at 1023 (citation omitted). These rates became the subject of an investigation before FERC.

Under the Federal Power Act ("FPA"), the rates charged by a public utility must be "just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful." 16 U.S.C. § 824d(a). Section 206 of the FPA gives FERC the authority, on its own initiative or upon filing of a complaint, to investigate whether a particular rate is "just and reasonable." *Port of Seattle*, 499 F.3d at 1023. If FERC finds a rate "unjust, unreasonable, unduly discriminatory or preferential," it must determine a just and reasonable rate and order that rate to be "observed and in force." *Id.* (citing 16 U.S.C. § 824e(a)). FERC may also order sellers to pay refunds to those entities that bought energy at the unlawful rate. *Id.* (citing 16 U.S.C. § 824e(b)). Such refunds are limited to a fifteen-month period following the "refund effective date," a date established by FERC that may be no earlier than the filing of the complaint nor later than five months after the filing. 16 U.S.C. § 824e(b). FERC may not order any refunds for the period before the refund effective date. *Port of Seattle*, 499 F.3d at 1023.

The petitioners here challenge several FERC orders that were issued following our remand in *Port of Seattle*. In *Port of Seattle* we reviewed several challenges to FERC's denial of refunds to wholesale buyers of electricity that purchased energy in the Pacific Northwest spot market at unusually high prices. We explained that FERC erred by initially excluding from the refund proceeding purchases made by the California Energy Resources Scheduling ("CERS") division of the California Department of Water Resources, and that FERC abused its discretion by denying potential relief for transactions involving energy that was ultimately consumed in California. *Id.* at 1022, 1032–34.

We also held that FERC's failure to consider evidence of market manipulation was arbitrary and capricious. *Id.* at 1034–36. It appeared that "Pacific Northwest sellers were apparently involved in Enron's manipulation" of western energy markets." *Id.* at 1035. As a consequence, FERC had to "consider the possibility that the Pacific Northwest spot market was not . . . functional and competitive." *Id.* On remand, FERC was instructed to examine the evidence of market manipulation "in detail and account for it in any future orders regarding the award or denial of refunds in the Pacific Northwest proceeding." *Id.* at 1035–36. If the record was not sufficient to inform a reasoned decision, we noted that FERC may "find it necessary to call for additional fact-finding." *Id.* at 1036.

After the remand, FERC proceeded to plan evidentiary hearings. *See Puget Sound Energy, Inc. v. All Jurisdictional Sellers of Energy*, 137 FERC ¶ 61,001 (Oct. 3, 2011). For the first time in the history of this proceeding, FERC took the position that it would invoke the *Mobile-Sierra* doctrine, under which the rates set forth in "short-term bilateral power

sales contracts" like these would be presumptively just and reasonable. *Id.* at paras. 20–21. The presumption could only be avoided or overcome if specific criteria were met, such as "where it can be shown that one party to a contract engaged in such extensive unlawful market manipulation as to alter the playing field for contract negotiations." *Id.*

Adoption of the *Mobile-Sierra* presumption carried implications for the scope of evidence that FERC intended to permit in the proceeding. Electricity buyers would need to "demonstrate that a particular seller engaged in unlawful market activity in the spot market and that such unlawful activity directly affected the particular contract or contracts to which the seller was a party." *Id.* at para. 21. "[G]eneral allegations of market dysfunction" would be insufficient to avoid or overcome the presumption. *Id.* FERC explained that parties could submit evidence of several specific violations that might entitle them to refunds: (1) violation of the WSPP Agreement; (2) violation of the terms of a specific bilateral contract underlying a particular purchase of electricity; or (3) certain other violations identified in a previous FERC case. *Id.* at paras. 18–19.

According to FERC, a market-wide remedy would be inappropriate because the Pacific Northwest spot market operated solely through bilateral contracts. *Id.* at para. 24. These contracts distinguished the transactions from those conducted by California's centralized power exchange, which operated through central clearing prices instead of negotiated contracts.

The California Parties and Seattle requested rehearing and challenged FERC's invocation of the *Mobile-Sierra* presumption and the scope of permissible evidence. A

request for expedited treatment of the requests for rehearing initially went unanswered by the agency, and the proceeding continued. FERC set a schedule for parties to present contract-specific refund claims as a part of settlement procedures.

While the requests for rehearing remained pending and settlement activity proceeded, FERC further addressed the *Mobile-Sierra* presumption and the scope of the Pacific Northwest proceeding in another order. Drawing on *Morgan Stanley,* which FERC cited to support its invocation of the *Mobile-Sierra* presumption, FERC clarified that refund claimants may overcome the presumption "by presenting evidence that a particular contract rate imposes an excessive burden on consumers or seriously harms the public interest." 141 FERC ¶ 61,248 at paras. 1, 12–15 (Dec. 21, 2012). FERC acknowledged that it had spawned confusion regarding the scope of the proceeding, but claimed that it had not intended to modify the law as summarized in *Morgan Stanley*. 141 FERC ¶ 61,248, at paras. 12–14.

FERC eventually denied the requests for rehearing and reaffirmed its application of the *Mobile-Sierra* presumption. 143 FERC ¶ 61,020 at para. 13 (Apr. 5, 2013). It also reaffirmed the limits it imposed on the scope of permissible evidence. *Id.* at para. 23. These petitions for review followed.

While these petitions were pending before us, the FERC proceeding marched on. Phase I of the proceeding was directed to whether the parties made a sufficient showing to avoid or overcome the *Mobile-Sierra* presumption with respect to their particular contracts and whether they were entitled to modification of their contracted rates. If

necessary, Phase II would address refund methodology. Following an initial decision on Phase I, 146 FERC ¶ 63,028 (Mar. 28, 2014), FERC then ruled on exceptions to the decision, 151 FERC ¶ 61,173 (May 22, 2015). FERC affirmed some of the Administrative Law Judge's ("ALJ") rulings and reversed others, ultimately remanding with instructions to the ALJ to make additional findings. *Id.* at para. 3.

## ANALYSIS

## I.  JURISDICTION

We first address our jurisdiction over these petitions. Seattle and the California Parties characterize their *Mobile-Sierra* challenge as purely legal and ripe for immediate review. According to FERC, the refund orders are not final reviewable actions. We disagree with both sides in part.

Our jurisdiction is governed by Section 313(b) of the FPA. 16 U.S.C. § 825*l*(b) (providing for review in the United States Court of Appeals of "an order issued by the Commission"). "Although section 313(b) is not limited on its face to final orders," we have joined other circuits in the view that "review under section 313(b) is limited to orders of definitive substantive impact, where judicial abstention would result in irreparable injury to a party." *Steamboaters v. FERC*, 759 F.2d 1382, 1387 (9th Cir. 1985) (citing *Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 238 (D.C. Cir. 1980) ("*Papago*")). Under *Steamboaters*, we ask first "whether the order is final; second, whether, if unreviewed, it would inflict irreparable harm on the party seeking review; and third, whether judicial review at this stage of the process

would invade the province reserved to the discretion of the agency." *Id.* at 1387–88.

Before proceeding with the *Steamboaters* inquiry, we underscore that the petitions raise two types of issues. The petitioners' threshold question is whether FERC properly invoked the *Mobile-Sierra* presumption. This challenge does not implicate the scope of admissible evidence; the objection is to the use of the *Mobile-Sierra* doctrine to shape the proceeding at all. We think of this issue as a facial applicability question: Did FERC appropriately invoke the *Mobile-Sierra* presumption under these circumstances?[2] Petitioners also challenge the restrictions that FERC imposed on the evidentiary proceeding. They want to be allowed to introduce evidence of, among other things, reporting violations, violations of obligations under the Uniform Commercial Code and state contract law, and violations by sellers that were not parties to the challenged contracts. We think of this issue as a question of the scope of the evidentiary proceeding.

With regard to the facial applicability issue, the criteria of *Steamboaters* are satisfied. FERC's decision to adopt the presumption in the context of short-term spot market

---

[2] We note that the question of whether *Mobile-Sierra* applies at all admits of both a facial applicability analysis and a contract-specific, as-applied analysis that is more appropriate in individual proceedings before the agency. This distinction becomes relevant when we turn to the legal question of whether FERC's interpretation of the "just and reasonable" standard is permissible. FERC's application of the *Mobile-Sierra* doctrine to a class of contracts may be reasonable even if it becomes unreasonable when individual parties to a proceeding produce evidence that undermines the presumption.

contracts has been definitively resolved, and we therefore have jurisdiction to review this final agency decision.

In order after order,  FERC has not budged from its position.  FERC's response that the decision is not final, because the parties can overcome the presumption, begs the question.  Unless the presumption applies, there is no legal hurdle to overcome.  The petitioners challenge only the facial applicability of the *Mobile-Sierra* presumption in a particular class of cases, not how FERC will apply it in the specific proceedings before it.[3] As to the facial applicability question, FERC has made a final decision that plainly "affects the legal positioning of the parties." *City of Fremont v. FERC*, 336 F.3d 910, 914 (9th Cir. 2003).

The practical consequence of not accepting review at this stage is that, if FERC is wrong about the applicability of the *Mobile-Sierra* doctrine, the remaining proceedings will be predicated on a faulty legal ground.  As in *City of Fremont*, the *Mobile-Sierra* presumption "will be treated as a benchmark" and petitioners face "the uphill task" to overcome it in their individual proceedings.  *Id.* at 914. These proceedings, which have multiplied and taken years to arrive at this stage, are no ordinary proceedings. To refrain from reviewing FERC's facial applicability determination and introduce a risk, however slight, that FERC would change its invocation of *Mobile-Sierra*, would be to ignore the greater risks to the parties in these ongoing proceedings. We take to heart that "[t]he reviewability of an order must . . . be

---

[3] To the extent that they challenge individualized determinations under the *Mobile-Sierra* doctrine, those determinations have not yet been made and there would be no final agency action to review.

determined by reference to its practical function and consequences." *Papago*, 628 F.2d at 239.

Finally, the issue presents a legal question capable of resolution by this court in a way that does not invade the agency's province. Deciding this pure legal issue in no way interferes with FERC's discretion to accept evidence in rebuttal in the remaining proceedings. *See Cal. Dep't of Water Res. v. FERC*, 361 F.3d 517, 520 (9th Cir. 2004); *Papago*, 628 F.2d at 238. "[I]mmediate review of the Commission's determination will not disrupt the continuing proceeding, nor will it raise the danger of multiple appellate proceedings concerning identical issues." *Papago*, 628 F.2d at 245.

We thus conclude that the test for final action under the FPA is met and that we have jurisdiction to review FERC's decision to employ the *Mobile-Sierra* presumption in the class of contracts at issue here.

When it comes to the scope of the evidentiary proceeding, however, the challenged orders are preliminary and lack "definitive substantive impact." *Steamboaters*, 759 F.2d at 1387; *see also FPC v. Metro. Edison Co.*, 304 U.S. 375, 383–84 (1938) (noting that "affording opportunity for constant delays. . .for the purpose of reviewing mere procedural requirements or interlocutory directions" would "do violence" to the FPA); *Cities of Anaheim v. FERC*, 723 F.2d 656, 660 (9th Cir. 1984) (stating that "procedural orders" are not reviewable). The orders do not have the requisite "definitive character *dealing with the merits* of a proceeding before the Commission" to support review under Section 313(b) of the FPA. *ASARCO, Inc. v. FERC*, 777 F.2d

764, 771 (D.C. Cir. 1985) (quoting *Metropolitan Edison Co.*, 304 U.S. at 384) (emphasis added).

For instance, FERC has already shifted course on the "shape" of the proceeding in a way that suggests some elements of its orders may not be sufficiently final for review. In October 2011, FERC articulated what evidence it would permit. 137 FERC ¶ 61,001 (Oct. 3, 2011). More than a year later, in December 2012, FERC refined its statement of the scope of the proceeding, acknowledging that confusion had resulted from the prior order. 141 FERC ¶ 61,248 (Dec. 21, 2012). Significantly, it appears that despite arguments raised by the petitioners, at least some evidence of bad faith may have been admitted in the Phase I proceeding.

While some harm might flow from proceeding under a flawed evidentiary framework, *see City of Fremont*, 336 F.3d at 914, the same risk stems from any order setting boundaries for a hearing. It is not enough to overcome the lack of finality of these orders on the scope of the evidentiary proceedings. The final order that results from the remand hearing will be reviewable and, indeed, will admit of more effective review of the evidentiary decisions since the court will be able to review all of the evidence taken together. The individual evidentiary restrictions challenged here are classic interim rulings whose consequence cannot be determined with any finality at this juncture.

Judicial review of the evidentiary issues thus "properly follows the conclusion of the proceeding." *Papago*, 628 F.2d at 240; *see also Cities of Anaheim*, 723 F.2d at 661. In contrast, an interim or midstream determination on the scope of the evidentiary proceeding would invite the "disruptive consequences of judicial interference" and "bring[] the courts

into the adjudication of the lawfulness of rates in advance of administrative consideration." *Papago*, 628 F.2d at 242 (quoting *S. Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 460 (1979)); *see also Delmarva Power & Light Co. v. FERC*, 671 F.2d 587, 595 (D.C. Cir. 1982) (warning against intruding on FERC's province where "the facts bearing on the interpretation of [filings and orders] are unclear and disputed, and these facts will bear heavily on determining whether the statute was violated").

"Under the rule in *Steamboaters*, the fact that one part of an agency order remains pending before the agency does not deprive this court of jurisdiction to review a discrete issue that has been definitively resolved by the agency." *Cal. Dep't of Water Res.*, 361 F.3d at 520. We therefore exercise jurisdiction only as to the issue of whether FERC erred by invoking the *Mobile-Sierra* doctrine and hold that we lack jurisdiction to review FERC's evidentiary orders.

## II. FACIAL APPLICABILITY OF THE *MOBILE-SIERRA* DOCTRINE

The *Mobile-Sierra* doctrine takes its name from two cases that dealt with the authority of FERC's predecessor, the Federal Power Commission, to determine whether rates set bilaterally by contract (as opposed to those set unilaterally by tariff) are just and reasonable. *See United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.* ("*Mobile*"), 350 U.S. 332 (1956); *Fed. Power Comm'n v. Sierra Pac. Power Co.* ("*Sierra*"), 350 U.S. 348 (1956). Where it applies, the doctrine requires FERC to presume that a contracted-for rate is "just and reasonable" under the FPA.

In 2008, after we decided *Port of Seattle*, the Supreme Court issued *Morgan Stanley*, its first *Mobile-Sierra* decision in decades. 554 U.S. 527. While *Mobile* and *Sierra* arose from suits brought by regulated sellers claiming that rates were too low, *Morgan Stanley* involved buyers' challenges to high contract rates. The Court explained that "[t]here is only one statutory standard for assessing wholesale electricity rates, whether set by contract or tariff—the just-and-reasonable standard." *Id.* at 545. Addressing the contract context, the Court set forth the baseline rule that FERC must "presume that the rate set out in a freely negotiated wholesale-energy contract meets the 'just and reasonable' requirement imposed by law." *Id.* at 530. In invoking the presumption here, FERC cited this rule from *Morgan Stanley*. 137 FERC ¶ 61,001, para. 20.

The Supreme Court emphasized that the *Mobile-Sierra* presumption is justified by the particular role that contracts play in the administrative scheme. "The regulatory system created by the [FPA] is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity." *Morgan Stanley*, 554 U.S. at 534 (quoting *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 822 (1968)). Where the presumption applies, the inquiry into whether the rate is lawful focuses on whether the contract rate "seriously harm[s] the public interest." *Id.* at 548.[4]

---

[4] The Court has since explained that "the *Mobile-Sierra* public interest standard is not an exception to the statutory just-and-reasonable standard; it is an application of that standard in the context of rates set by contract." *NRG Power Mktg., LLC v. Maine Pub. Utils. Comm'n*, 558 U.S. 165, 168 (2010); *see also Morgan Stanley*, 554 U.S. at 546 (explaining the doctrine

The petitioners argue that *Morgan Stanley* does not support FERC's decision to invoke the *Mobile-Sierra* presumption with respect to contracts of the nature at issue here. The circumstances here, according to petitioners, render the presumption illogical because the contracts were not freely negotiated long-term contracts with lawful prices. Instead, the transactions were short-term spot sales with a high degree of pressure on buyers. Petitioners' argument is essentially that the FPA's "just and reasonable" standard should not be interpreted as impliedly incorporating the *Mobile-Sierra* doctrine, as it was in *Morgan Stanley*. *Id.* at 545–46. Although it is true that the statutory language does not clearly spell out the application of the "just and reasonable" standard, under *Chevron*, we defer to FERC's reasonable determination that *Mobile-Sierra* extends to the context of short-term spot sales. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

The mere short-term nature of these spot sale contracts does not render FERC's application of the *Mobile-Sierra* doctrine unreasonable. Although long-term contracts may play a special role in stabilizing the energy market (a role spotlighted by the "turmoil in the spot market" in the 2000-2001 energy crisis, *Morgan Stanley*, 554 U.S. at 539–40, 547–48), the Supreme Court has drawn the rule so that the presumption may be invoked with regard to any contracted-for rate. *Id.* at 551; *see also NRG Power Mktg., LLC*, 558 U.S. at 168 ("The 'venerable *Mobile-Sierra* doctrine' rests on 'the stabilizing force of contracts.'") (quoting

provides "a definition of what it means for a rate to satisfy the just-and-reasonable standard in the contract context—a definition that applies regardless of when the contract is reviewed").

*Morgan Stanley*, 554 U.S. at 548). The fact that some contracts adopted the form of the WSPP Agreement (a FERC-jurisdictional standardized form agreement) does not change our analysis, as the sales were still made pursuant to contracts. After the presumption is invoked, the parties may avoid or rebut it based on an evidentiary showing,[5] but FERC's baseline assumption that the presumption applies to the contracts at issue is not unreasonable in light of *Morgan Stanley*.

The petitioners' numerous other arguments are also unconvincing. We see no reason why having notice of a § 206 proceeding when the contracts were formed would render it irrational to apply the presumption. The petitioners also overstate *Lockyer*, which stopped short of establishing that sellers who fail to meet reporting requirements have automatically charged unlawful prices so as to defeat the presumption. 383 F.3d at 1008.

---

[5] It is important to remember that just because the presumption has been invoked at the beginning of a given proceeding does not mean it ultimately will apply to that case in the end. "FERC has ample authority to set aside a contract where there is unfair dealing at the contract formation stage—for instance, if it finds traditional grounds for the abrogation of the contract such as fraud or duress. In addition, if the 'dysfunctional' market conditions under which the contract was formed were caused by illegal action of one of the parties, FERC should not apply the *Mobile-Sierra* presumption." *Morgan Stanley*, 554 U.S. at 547 (citation omitted). FERC cited these possibilities in its December 2012 order. 141 FERC ¶ 61,248, at para. 7. Where the presumption is rebutted in this way, a party challenging a rate no longer has to show that the "contract rates at issue impose an excessive burden or seriously harm the public interest" in order to prove that a rate is unlawful. *See id.* at para. 14.

The WSPP Agreement does not contain a "*Memphis*" clause[6] that permits parties to amend their contracts unilaterally by complaint. The WSPP Agreement establishes standardized terms for power transactions to which individual terms (such as price, volume, and duration) are appended in separate confirmation agreements. The sections identified by petitioners do not permit unilateral amendments to confirmation agreements or the associated contractual rates.

Finally, the factual and evidentiary issues raised by the petitioners are more appropriately considered in the context of eventual challenges to the scope of the evidentiary proceedings. For example, the California Parties argue that CERS was bullied into making purchases via these bilateral contracts when sellers refused to sell in the usual channels. Seattle claims that FERC disregarded this court's instruction in *Port of Seattle* to take into account evidence of market manipulation. These arguments relate to downstream proceedings, such as whether the presumption can be overcome and whether FERC's eventual decision is based on a proper record. These types of factual and evidentiary matters do not speak to whether FERC properly invoked *Mobile-Sierra* as a baseline, even if the evidence surrounding these contested circumstances ultimately warrants avoidance or rebuttal of the presumption. "[T]he mere fact that the market is imperfect, or even chaotic, is no reason to undermine the stabilizing force of contracts." *See Morgan*

---

[6] The name of the clause comes from *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div.*, 358 U.S. 103, 110–13 (1958), in which the Supreme Court held that parties may "contract out of the *Mobile-Sierra* presumption by specifying in their contracts that a new rate filed with the Commission would supersede the contract rate." *Morgan Stanley*, 554 U.S. at 534.

*Stanley*, 554 U.S. at 547–48. We thus decline to extend our analysis to these disguised efforts to rebut the presumption as applied to these individual parties before FERC has had an opportunity to conclude the proceedings. We need only decide whether FERC reasonably applied *Mobile-Sierra* to the class of contracts at issue here, and we hold that FERC's interpretation is reasonable.

We deny the petition with respect to petitioners' claim that the *Mobile-Sierra* presumption cannot apply to the spot sales at issue in this case and dismiss the evidentiary challenges for lack of jurisdiction.

**DENIED IN PART**; **DISMISSED IN PART**.